UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRANDON DEUTSCH, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>MY PILLOW, INC.,<br><br>　　Defendant. | Case No. _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　Plaintiff, BRANDON DEUTSCH ("Plaintiff"), by and through the undersigned attorneys, brings this Complaint against Defendant MY PILLOW, INC., ("Defendant" or "My Pillow") individually and on behalf of all similarly situated individuals and states as follows:

**INTRODUCTION**

　　1.　　This is a class and collective action brought by Plaintiff on his own behalf and on behalf of all similarly situated current and/or former employees of Defendant to recover for Defendant's willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Minnesota Fair Labor Standards Act ("MFLSA") Minn. Stat. §§ 177.21-177.35, the Minnesota Payment of Wages Act ("MPWA") Minn. Stat. § 181 *et seq.,* and other appropriate rules, regulations, statutes, and ordinances.

　　2.　　Defendant My Pillow is a Minnesota corporation. Defendant most notably sells pillows which it advertises as providing superior stabilizing and supporting qualities. *See FAQ*, My Pillow, https://www.mypillow.com/faq (last visited Jan. 23, 2020). While Defendant may be best known for its pillows, Defendant also sells bed sheets, mattress toppers, dog beds, and towels in its retail stores throughout Minnesota as well as on its website, www.mypillow.com.

1

3. To facilitate sales, Defendant employs Customer Service Agents to answer customer questions and place orders for Defendant's products. Plaintiff was employed by Defendant as a Customer Service Agent from December 2017 until October 2019. As a Customer Service Agent Plaintiff was tasked with taking calls from Defendant's customers, listening to customers' complaints, and providing customers with information regarding Defendant's products.

4. Defendant regularly employed Plaintiff and other similarly situated current and/or former employees to work full-time, scheduling Plaintiff and other similarly situated for forty (40) hours per week. However, Plaintiff and those similarly situated were subject to Defendant's policy and practice of employing Customer Service Agents to work pre-shift and post-shift off-the-clock time without compensation. This policy resulted in Plaintiff and other similarly situated former and/or current employees not being paid for all overtime hours worked, in violation of the FLSA.

5. Defendant knew or could have easily determined its employees' pre-shift and post-shift work performed, and Defendant could have properly compensated Plaintiff and other similarly situated former and/or current employees, but it did not.

6. The U.S. Department of Labor specifically condemns an employer's non-payment of an employee's necessary preliminary and postliminary activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *See* DOL Fact Sheet #64, at 2, attached hereto as Exhibit B. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.* at 2.

7. Plaintiff brings this action on behalf of himself, and all other similarly situated

employees of Defendant, to recover unpaid wages and overtime, liquidated damages, penalties, attorney's fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. §§ 201, *et seq*.

9. This Court also has subject-matter jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10. Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce, and therefore, they are also covered by the FLSA on an individual basis.

11. This Court has supplemental jurisdiction over the Minnesota state law wage and hour class pursuant to 28 U.S.C. § 1367 because all Minnesota state law wage and hour claims are so related to the federal claims that "they form part of the same case or controversy" such that they should be adjudicated in one judicial proceeding.

12. This Court has personal jurisdiction over Defendant My Pillow because it is headquartered within the State of Minnesota, does business within the State of Minnesota, and is registered with the Minnesota Secretary of State.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs personnel in this District, and a substantial portion of the actions and omissions giving

rise to the claims pled in this Complaint substantially occurred in this District.

## PARTIES

14.     Plaintiff, BRANDON DEUTSCH, is an individual who resides in the County of Rice, City of Lonsdale, Minnesota. Plaintiff was employed by Defendant as an hourly Customer Service Representative from approximately December 2017 until October 2019. Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and his Consent to Sue is attached hereto as Exhibit A.

15.     Defendant MY PILLOW, INC. is a Minnesota corporation engaged in retail sales. Defendant's principal executive office is located at 343 East 82nd Street, Suite 102, Chaska, MN 55318.

## GENERAL ALLEGATIONS

16.     Plaintiff was employed by Defendant as a Customer Service Representative on an hourly basis from approximately December 2017 until October 2019. Plaintiff's hourly rate was $13.00 per hour plus commission.

17.     Plaintiff's primary job duties as a Customer Service Representative included, but was not limited to, answering customer calls and placing orders for various My Pillow products, up-selling various products and programs, answering questions about the products, and responding to and handling customer complaints.

18.     Plaintiff worked in excess of worked forty (40) hours per week while employed by Defendant.

19.     Whether Plaintiff's total workweek hours were forty (40) or in excess of forty (40), Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of his job as a Customer Service Representative. The off-the-clock tasks varied, and Plaintiff was never

compensated for this time.

20. 29 C.F.R. § 553.221 provides:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

29 C.F.R. § 553.221(b).

21. 29 C.F.R. § 790.8 provides that "[a]mong the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance." 29 C.F.R. § 790.8(c).

### A. *Pre-Shift Work*

22. Defendant required Plaintiff and other similarly situated former and/or current employees to allot time to come into the office before their scheduled shifts to get to their work stations, boot up their computers, launch and log into all necessary programs and clock-in on Defendant's time keeping system, or before, their scheduled shifts. This pre-shift procedure would take approximately eight to fifteen minutes per shift.

23. In order for Plaintiff to perform his job, the pre-shift procedure of arriving to Defendant's facility, walking through the facility, booting up Defendant's computer, logging into Defendant's computer, launching and logging into all of Defendant's necessary programs including Windows, an internet browser, and ADP's website to clock in to Defendant's time keeping program on, or before, the start time of Plaintiff's scheduled shift was integral and indispensable to Defendant's business and integral and indispensable to the performance of a Customer Service Representative's principal job duties.

5

24. At all times relevant to this Complaint, Defendant suffered or permitted Plaintiff and other similarly situated former and/or current employees to routinely perform off-the-clock pre-shift work by not recognizing its employees as "clocked-in" until *after* the pre-shift procedure was complete. If Plaintiff and other similarly situated former and/or current employees clocked in before their scheduled shifts, Defendant refused to recognize pre-shift time as compensable.

25. Defendant willfully engaged in the policy and practice of calculating Plaintiff's compensable hours, and other similarly situated former and/or current employees' compensable hours, beginning at the scheduled start time of its employees' shifts and not the time Plaintiff and all other similarly situated employees, actually began working despite knowing, and in fact, directing, its employees to arrive to work early for the purposes of completing lengthy computer boot-up and sign-in processes by the employee's scheduled shift start time.

26. Defendant knew or should have known that its employees are required to be paid for all compensable time throughout the workweek. Further, Defendant knew or should have known that its employees do, in fact, perform compensable pre-shift work as 29 C.F.R. § 553.221 and C.F.R. § 790.8 provides.

27. Despite this, Defendant failed to compensate its employees for pre-shift compensable time in any amount.

28. Additionally, Defendant knew or should have known that, under the FLSA, Plaintiff should have been paid overtime "at a rate not less than one and one-half times the regular rate" at which he was employed for all compensable pre-shift time for workweeks in excess of forty (40) hours. 29 U.S.C. § 207(a)(1).

29. Despite this, Defendant failed to pay overtime at one and one-half times the regular rate for Plaintiff's pre-shift compensable time.

30. In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy and plan of employing Plaintiff to perform pre-shift work without compensation. This policy resulted in Plaintiff and other similarly situated former and/or current employees not being paid for all time worked, and for all of their overtime hours worked, in violation of the FLSA.

### B.     Employee Records

31. 29 C.F.R § 516.1 requires "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records. 29 C.F.R. § 516.1(a).

32. The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. See 29 C.F.R § 516.2.

33. Defendant failed to maintain and preserve accurate timesheet and payroll records as required by 29 C.F.R § 516.2.

34. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687–88.

35. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the

FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA individually and on behalf of a putative Class (the "FLSA Collective Class") defined to include:

> All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who worked forty (40) or more hours per week and were not paid for off-the-clock work.

37. Plaintiff does not bring this action on behalf of any employees exempt from coverage under the FLSA pursuant to the executive, administrative, or professional exemptions, or for those employees who were paid for off-the-clock work at the proper legal rate for each hour worked.

38. *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*: With respect to the claims set forth in the FLSA action, conditional certification under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The Class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's policies of not paying its employees overtime at a rate of one-and-one-half times their regular rate for all compensable time worked); (c) their claims are based upon the same factual and legal theories; and (d) the employment relationship between Defendant and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

39. Upon information and belief, there are numerous other similarly situated current

and/or former Customer Service Agents or other job titles performing similar job duties who performed off-the-clock work during their preliminary 'boot up' time and/or postliminary time who were not compensated at the proper legal rate for each hour worked and would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

40. Plaintiff shares the same interests as the putative FLSA Collective Class and will be entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings the action pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4) on behalf of a putative Class ("Minnesota Class") defined to include:

> All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who worked forty (40) or more hours per week and were not paid for off-the-clock work.

Plaintiff reserves the right to amend the putative class definition as necessary.

42. *Numerosity:* The members of the Minnesota Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

43. *Commonality/Predominance:* There is a well-defined community of interest among Minnesota Class members and common questions of *both* law and fact predominate in the

action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether the preliminary time the Minnesota Class members spend on boot up and log-in activities each shift is compensable under the MPWA;

    b.    Whether Defendant's pay practices violated the MPWA and the MFLSA;

    c.    whether Defendant violated the MPWA and the MFLSA by failing make, keep, and preserve true and accurate payroll records;

    d.    whether Defendant should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the MPWA and MFLSA; and

    e.    whether Defendant's violations of the MPWA and the MFLSA were willful.

44. *Typicality:* Plaintiff's claims are typical of those of the Minnesota Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Minnesota Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Minnesota Class members: whether all Class members were employed by Defendant on an hourly basis without receiving compensation for "off-the-clock" wages owed for that work.

45. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Minnesota Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel has interests that are contrary to, or conflicting with, the interests of the Minnesota Class.

46. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible

Minnesota Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

47. The case will be manageable as a class action. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

### A.     *Enforcement of the Commissioner's Remedies*[1]

48. By its express terms, the MFLSA entitles an aggrieved employee to stand in the shoes of the Commissioner of Labor and Industry to enforce certain remedial provisions of the MFLSA. *See* Minn. Stat. § 177.27; *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608 (Minn. 2008). The chief remedy afforded the Commissioner is injunctive relief and issuance of civil penalties for willful violations of the Act.

49. Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Minnesota Class—acting in their capacity to enforce the Commissioner's remedies—seeks an order from this Court enjoining Defendant from its continued violation of the MFLSA and for an award of civil penalties.

---

[1]     As noted below, Plaintiff contends he is not required to plead the Commissioner's remedies or request for civil penalties as a class. Specifically, Minn. Stat. § 177.27 *et seq.*, entitles an employee to stand in the Commissioner's shoes to enforce the MFLSA. The Act does not require the Commissioner to seek class certification to obtain relief for *all* MFLSA violations conducted in Minnesota. Accordingly, Plaintiff asserts this claim in the alternative to the extent the Defendant argues the Commissioner may only enforce the MFLSA as a class.

50. Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Minnesota Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### (On behalf of the FLSA Collective Class)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. §§ 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

51. Plaintiff re-alleges and incorporates all previous paragraphs herein.

52. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

53. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

54. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

55. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

56. The position of Customer Service Representative is not exempt from the FLSA.

57. Defendant's other job titles performing similar job duties are not exempt from the FLSA.

58. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

59. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

60. Defendant violated the FLSA by failing to pay Plaintiff and members of the FLSA Collective Class the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

61. Upon information and belief, Defendant has corporate policies and practices of evading paying its hourly workers for all for all compensable time and overtime hours worked.

62. Defendant's violations of the FLSA were knowing and willful.

63. By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for off-the-clock work performed in excess of forty hours in a workweek, Defendant has violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated employees are victims of a uniform and company-wide policies which operate to compensate employees at a rate less than the federally mandated overtime wage rate. These uniform policies, in violation of the FLSA, have been, and continue to be, applied to all employees who have worked or are working for Defendant in the same or similar position as Plaintiff.

64. As a result, Plaintiff and the FLSA Collective Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the FLSA Collective Class are entitled to recover unpaid wages owed, liquidated damages, plus costs and attorney fees, and other appropriate relief under the FLSA, at an amount to be proven at trial.

**COUNT II**
**(On Behalf of the Minnesota Class)**
**VIOLATIONS OF THE MINNESOTA PAYMENT OF WAGES ACT**
**MINN. STAT. §§ 181, *ET SEQ.*, FAILURE TO TIMELY PAY WAGES**

65. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

66. At all times relevant to the action, Defendant was an employer within the meaning

of the MPWA. Minn. Stat. §181.171(4).

67. Minn. Stat. § 181.101 entitles employees to compensation for every hour worked in a workweek and requires every employer to pay all wages earned by an employee at least once every 31 days on a regular payday. *See* Minn. Stat. § 181, *et seq.*; Minnesota Rules, part 5200.0120, subpart 1.

68. Defendant violated the MPWA by regularly and repeatedly failing to compensate Plaintiff and the Minnesota Class for the time spent on the off-the-clock preliminary activities described in this Complaint.

69. Defendant's actions were willful and not the result of mistake or inadvertence. *See* Minn. Stat. § 541.07(5).

70. As a result, Plaintiff and the Minnesota Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Minnesota Class are entitled to recover unpaid wages owed, plus costs and attorney fees, and other appropriate relief under the MPWA at an amount to be proven at trial.

## COUNT III
### (On Behalf of the Minnesota Class)
**VIOLATIONS OF THE MINNESOTA FAIR LABOR STANDARDS ACT**
**MINN. STAT. § 117.30, FAILURE TO KEEP ACCURATE RECORDS**

71. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

72. Defendant is required to make and keep a record of hours worked each day and each workweek by its employees. Minn. Stat. § 177.30.

73. Defendant violated the MFLSA's record keeping requirement by failing to record each hour Plaintiff and the Minnesota Class worked. Specifically, Defendant's policies on compensable time prevented Plaintiff and the Minnesota Class from recording work performed

during pre-shift time and post-shift time, thereby failing to keep records of all hours Plaintiff and the Minnesota Class worked.

74. As a direct and proximate result of Defendant's conducts, Plaintiff and the Minnesota Class have suffered damages.

## COUNT IV
### (Commissioner's Remedies)
### VIOLATIONS OF THE MINNESOTA PAYMENT OF WAGES ACT
### MINN. STAT. § 177.27, SUBD. 8

75. Minn. Stat. § 177.27, subd. 8, entitles an employee to bring an action on behalf of the Commissioner of Labor and Industry. *See generally* Minn. Stat. § 177.27, subd. 8; *see also Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608 (Minn. 2008).

76. The Commissioner's remedies include, but are not limited to:

   a. Enforcement of the MFLSA's record keeping provisions (Minn. Stat. § 177.30);

   b. Enforcement of the MFLSA in general (injunctive and declaratory relief, Minn. Stat. §177.30, sub. 4);

   c. Enforcement of the MPWA's requirement employers pay wages for each hour worked (Minn. Stat. § 181.101); and

   d. Enforcement of the MPWA's prompt pay laws (Minn. Stat. § 181 *et seq.*).

77. Defendant violated each and every one of the provisions set forth in Minn. Stat. § 177.30 subparts (a) through (d) by failing to keep accurate time records, failing to pay for all time worked, and requiring its employees to work off-the-clock.

78. Pursuant to Minn. Stat. § 177.27 sub. 7 an employer who violates any section of the Act, "[s]hall be subject to a civil penalty of up to $1,000 *for each violation for each employee.*

79. As noted above, Defendant is a large, sophisticated employer who has intentionally and systematically violated the wage and hour laws of the state of Minnesota for its own gain.

80. Minn. Stat. § 177.27 sub. 7 does not require the Commissioner to proceed, seek, or

obtain certification to impose the civil penalty for an employer's violations of the MFLSA or MPWA.

81.     As a direct result of Defendant's violation of the MFLSA and MPWA, Plaintiff is entitled to seek a civil penalty and injunctive relief on the Commissioner's behalf for each and every violation of the MFLSA and MPWA Defendant's committed at an amount to be proven at trial.

**WHEREFORE**, Plaintiff requests the following relief:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.  Certifying this case as a class action pursuant to Rule 23(b)(2) and (b)(3) with respect to the Minnesota state law claims set forth above;

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective Class members, and permitting Plaintiff to send notice of this action to all similarly situated employees, including the publishing of notice in a manner that is reasonably calculated to apprise said employees of their rights by law to join and participate in this lawsuit;

d.  Designating Named Plaintiff as the FLSA Collective Class Representative;

e.  Designating Named Plaintiff as the Minnesota Class Action Representative;

f.  Appointing undersigned counsel as FLSA Collective Class counsel with respect to Plaintiff's FLSA claims;

g.  Appointing undersigned counsel as Class counsel with respect to Plaintiff's Minnesota class action claims;

h.  Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

i.  Declaring that Defendant willfully violated the MFLSA and the MPWA, and its attendant regulations as set forth above;

j.  Declaring that Defendant violated its obligations under the FLSA;

k.  Declaring that Defendant violated its obligations under the MFLSA and the MPWA;

l.     Awarding all legal and equitable relief to Plaintiff under the MFLSA and MPWA, Minn. Stat. § 177.27, *et seq.* and 181;

m.     Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid off-the-clock overtime wages calculated at the rate of one and one-half (1.5) times the Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of the prescribed number of hours per week for the past three years for the FLSA Collective Class;

n.     Awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid wages found owing to Plaintiff and awarding Plaintiff and the class members all other available compensatory damages available by law;

o.     Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

p.     Awarding pre- and post-judgment interest to Plaintiff on these damages; and

q.     Such further relief as this court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated: January 23, 2020

    */s/ Jennell K. Shannon*
Jennell K. Shannon (MN Bar. No. 398672)
Timothy J. Becker (MN Bar. No. 256663)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
jshannon@johnsonbecker.com
tbecker@johnsonbecker.com

*Counsel for Plaintiff and the Proposed Classes*