UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BRANDON DEUTSCH, individually
and on behalf of all others similarly
situated,

           Plaintiff,

    v.

MY PILLOW, INC.,

           Defendant.

Court File No. 20-cv-00318 (SRN-
ECW)

**MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL
CERTIFICATION**

---

## I.    INTRODUCTION

Although Plaintiffs' evidentiary standard on this motion for conditional certification may be low, "it is not invisible." *Williams v. Skyes Enters., Inc.*, Civ. No. 13-0946 (JRT/JJG), ECF No. 86, Order at 6 (D. Minn. Oct. 3, 2013) (Rusch Decl. Ex. 4) (quoting *Parker*, 492 F. Supp. 2d at 1164). And yet, in support of their motion for conditional certification of an entire class of call-center employees, Plaintiffs cast this evidentiary burden aside and rely on a fundamental misconception that all "call center jobs are generally homogenous." (August 5, 2020 Memorandum of Law Supporting Plaintiffs' Motion for Conditional Certification and Notification to All Putative Class Members Under 29 U.S.C. § 216(b) ("Plfs. Mem."), ECF No.

37 at 1, 10.) But the instant motion does not seek to certify a putative class of employees from "call centers in general;" (Plfs. Mem. at 2) it seeks to certify a putative class of employees from Defendant My Pillow Inc.'s call center which, as demonstrated herein, has legally-compliant wage and hour practices.

Setting aside the allegations regarding "call centers in general" and focusing solely on the evidence submitted to this Court with regard to My Pillow's call center, it is clear that this case and those cited in Plaintiffs' memorandum are far from homogenous. Plaintiffs submit just one declaration in support of their motion for conditional certification of a class of all call-center employees. Plaintiffs ask the Court to infer from this single declaration that My Pillow had a common, company-wide, unlawful policy not to compensate for pre-shift and post-break work. The experiences of Named Plaintiff Brandon Deutsch and Opt-In Plaintiff Craig Lyons, which themselves are contradicted by record evidence, fail to tender sufficient evidence to permit the Court to draw such an inference. *See West v. Border Foods, Inc.*, Civ. No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *1, 7-9 (June 12, 2006) (denying conditional certification because allegations from just six out of the potential 240 putative class members was not sufficient to meet plaintiffs' burden). Similarly, the participation of one named-plaintiff and two opt-in plaintiffs falls

short of establishing requisite interest in prosecuting this case. *See Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164-66 (D. Minn. 2007) (denying certification because only one named-plaintiff and two opt-in plaintiffs demonstrated interest in prosecuting the claims). Therefore, Plaintiffs fail to meet their burden both quantitively and substantively, and conditional certification should be denied.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff Brandon Deutsch filed the original Complaint in this action on January 24, 2020, alleging that My Pillow—his previous employer—violated the overtime provisions of the Fair Labor Standards Act and Minnesota's wage and hour laws by requiring him to work off the clock prior to his scheduled shifts at My Pillow's call center.

After service of the original Complaint, the parties engaged in informal discovery and My Pillow produced Deutsch's badge-swipe records (documenting Deutsch's entrance into the call center building) and timecard records (documenting Deutsch's punch-in and punch-out times). (Declaration of Sherry Miles ("Miles Decl.") ¶ 6.) My Pillow also produced a workbook reflecting badge-

swipe and timecard record data for a sampling of other call center employees. (*Id.*) This data demonstrates that the amount of time elapsed between an employee's entrance into the building and punching in for his or her shift—including time spent walking to the work station which is non-compensable under the Portal-to-Portal Act—is *de minimis*. My Pillow produced this information to Plaintiffs with the hope that Plaintiffs would voluntarily dismiss their claims. Rather than dismiss this action, Plaintiffs filed a First Amended Class and Collective Action Complaint (ECF No. 31, hereinafter "Am. Compl.") on June 17, 2020. The Amended Complaint contains the same allegations as the original Complaint but adds an additional category of allegedly uncompensated, off-the-clock work: post-break time spent punching back in.

Plaintiffs now seek conditional certification of a putative class of employees in My Pillow's call center, defined as follows:

> All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who worked forty (40) or more hours per week and were not paid for off-the-clock work.

(Am. Compl. ¶ 46.) In Plaintiffs' quest for conditional certification, however, they ignore their obligation to provide evidence of a colorable basis for their claim that the putative class members were victims of a single illegal decision, policy, or plan.

Rather, Plaintiffs rely on the unsworn allegations of the Amended Complaint and the declaration of a single former employee; neither or which harness requisite credibility sufficient to be considered by this Court.

**B.      My Pillow's Call Center**

My Pillow is a pillow manufacturing company most-known for its patented MyPillow, an open-cell, poly-foam pillow design. (Miles Decl. ¶ 2.) It also manufactures mattresses, mattress toppers and covers, sheets, and pet beds. My Pillow's headquarters and call center are located in Chaska, Minnesota. (*Id.*)

During the relevant period, My Pillow employed as many as 100 individuals in its call center. (Miles Decl. ¶ 3.) There are four shifts in the call center: day, mid, evening, and overnight. (*Id.*) During the day, mid, and evening shifts, My Pillow employs Customer Service Representatives ("CSRs") and Sales Agents in its call center. (*Id.*) CSRs assist customers with exchanges, refunds, and registering products. (*Id.*) Sales Agents assist customers with completing sales. (*Id.*) These two positions are combined into one Customer Service / Sales Representative position ("CSSRs") for the night shift. (*Id.*) The hybrid CSSR position is paid a higher base pay than evening, mid, and day-shift sales representatives and CSSRs are also

eligible to receive commission on their net sales. (*Id.*) My Pillow employs approximately ten employees in the overnight shift at the call center. (*Id.*)

### C.   Named Plaintiff Brandon Deutsch's Allegations

Deutsch was employed by My Pillow as an overnight-shift CSSR from approximately December 14, 2017, until approximately September 27, 2019. (Am. Compl. ¶ 3; Ans. ¶ 3; Miles Decl. ¶ 4.) His job was to answer the phone and, depending on the nature of the call, either complete a sale or provide customer service using a pre-determined script provided to him by My Pillow. (Miles Decl. ¶ 4.) Upon being hired, Deutsch was paid $12.00 per hour. (*Id.*) During the course of his employment, Deutsch's hourly wage was increased to $13.00. (*Id.*) He also received commission pay in the amount of 2.7% of his net sales. (*Id.*) Although Deutsch was hired to be a full-time employee, he rarely worked more than forty hours a week. (Miles Decl. ¶ 5; Ans. ¶ 4.) He was terminated on September 27, 2019, for violating My Pillow's attendance policy. (Miles Decl. ¶ 5.) In particular, Deutsch regularly showed up late for work, would skip shifts without notifying My Pillow, and took frequent breaks. (*Id.*) Deutsch was also found sleeping during his shifts and My Pillow received customer complaints based on Deutsch's behavior during calls. (*Id.*)

In the Amended Complaint, Deutsch alleges that My Pillow required Deutsch and the putative class members to "come into the office before their scheduled shifts to get to their work stations, boot up their computers, launch and log into all necessary programs and clock-in on [My Pillow's] time keeping system, or before [sic], their scheduled shifts." (Am. Compl. ¶ 22.)[1] Deutsch alleges that getting to his workstation, booting up his computer, launching and logging into necessary programs (such as Windows, an internet browser, and ADP), and punching in via ADP would take "approximately eight to fifteen minutes per shift." (*Id.*) Deutsch further alleges that each time he and other members of the putative class punched back in after taking a break, they "had to wait 1-2 minutes" for ADP to load, resulting in a minimum of an additional 3-6 minutes per workday for which Deutsch and the putative class members were not paid. (Am. Compl. ¶¶ 31-34.) According to Deutsch, therefore, My Pillow's timekeeping system resulted in eleven to twenty one minutes of uncompensated work per shift. He alleges that if he and putative class members "clocked in before their scheduled shifts, [My Pillow] refused to recognize pre-shift time as compensable." (Am. Compl. ¶ 24.)

---

[1] Deutsch did not submit a declaration in support of the motion for conditional certification, nor did he verify the Complaint under oath.

### D.    Opt-In Plaintiff Craig Lyons' Allegations

Only two consent-to-sue forms have been filed,[2] and only one opt-in plaintiff submitted a declaration in support of Plaintiffs' instant motion. Craig Lyons was employed by My Pillow as a CSR from approximately February of 2018 until September of 2019. (Lyons Decl., ECF No. 38-2, ¶ 3.) Lyons states that his primary duties were "to answer calls from customers that had purchased products from My Pillow or were interested in purchasing products from My Pillow." (*Id.*) He further alleges that his supervisor, whom he believes was named Debbie, told[3] him "to show up to work at least 15 minutes prior to [his] shift so [he] could boot up and log into [his] necessary programs and be ready to begin taking calls at the start of [his] shift." (*Id.* ¶ 6.) Lyons alleges that this required him to turn on the computer, wait for it to load, log into his account, wait for the Desktop to load, open Google Chrome, and wait for ADP to load. (*Id.* ¶ 7.) Lyons alleges that this process "regularly took between 5-10 minutes, or more" and that, on August 7, 2019, it took approximately 8 minutes. (*Id.*) He avers that he was not paid for this

---

[2] Upon information and belief, opt-in Plaintiff Shandrea Jenkins is Deutsch's girlfriend.

[3] Importantly, Lyons does not allege that he was "required" to begin working fifteen minutes prior to his shift.

time and that, if he did not arrive early to complete this process prior to his scheduled shift, he "would be considered late." (*Id.* ¶ 9.)

Lyons alleges that "all CSRs had to be ready to take their first phone call and provide customer service at the start of their shift, just like me." (*Id.* ¶ 8.) He generally states that he "is aware of and [has] personal knowledge of other call center employees . . . who were subjected to [My Pillow's] same practices" yet he does not provide any names or any additional supporting declarations. (*See id.* ¶¶ 13-14.)

**E.      The limited evidence proffered by Plaintiffs is demonstrably inaccurate.**

Although the court does not typically make credibility determinations at this stage of the proceedings, it need not turn a blind eye to documented inaccuracies in the thimbleful of evidence offered by Plaintiffs in support of their motion. *See Saleen v. Waste Mgmt., Inc.* ("*Saleen I*"), 649 F. Supp. 2d 937, 942 (D. Minn. 2009) ("[T]he Court is unaware of any court that has agreed with plaintiffs' position that evidence submitted by a defendant resisting conditional certification should be completely ignored."); *McDermott v. Fed. Sav. Bank,* No. 14CV6657JMAGRB, 2018 WL 1865916, at *5 (E.D.N.Y. Apr. 18, 2018) ("[T]he Court is not required to turn a blind eye to evidence in the record that is relevant to the

conditional certification determination."). Here, the allegations of the Amended Complaint and those contained within Lyons' declaration demonstrably lack credibility.

>    i.    *Deutsch's Allegations Lack Credibility*

Deutsch's allegations as reflected in the Amended Complaint are directly contradicted by his badge-swipe and timecard records. As an initial matter, these records expose the inaccuracy of Deutsch's claim that he was in the call center and working eight to fifteen minutes prior to clocking in for his shift. In August and September of 2019, for example, ***Deutsch never spent more than two minutes and forty-nine seconds (2:49)—let alone the eight to fifteen minutes that he alleges— in the building prior to clocking in for his shift***. (*See* Miles Decl. Ex. A.) Therefore, Deutsch was not even in the building during the periods in which he claims a company-wide policy "required" him to perform uncompensated pre-shift work. *Accord Norris v. Bluestem Brands, Inc.* ("*Norris III*"), No. 16-CV-03954, 2019 WL 1767408 at *4 (D. Minn. April 22, 2019) (decertifying the call center class when the named plaintiff's swipe card data revealed that plaintiff "did not consistently arrive at work ten to fifteen minutes early" as alleged).

In fact, Deutsch frequently entered the building mere minutes prior to clocking in and receiving compensation. For the months of August and September of 2019, for example, Deutsch punched in on average one minute and fourteen seconds (1:14) after first entering the call center for the day. (Miles Decl. Ex. A.) This average includes the non-compensable time that it takes for Deutsch to walk from the employee entrance to the building to his work station and complete his punch-in. After leaving the call center during his breaks, Deutsch—on average—punched in and began receiving compensation sixteen seconds (:16) after re-entering the call center, again including non-compensable walking time. (*Id*.)

Therefore, Deutsch's claims that: 1) My Pillow required him to be in the call center to boot up his computer for eight to fifteen minutes per shift without compensation; and 2) Deutsch spent on average one-to-two minutes after each break—or three-to-six minutes each shift—clocking back in without compensation are inaccurate and insufficient to establish a colorable basis for the allegations lodged in his complaint.

ii.   *Lyons' Declaration Is Similarly Inaccurate*

Plaintiffs submit only one declaration for the Court to consider in certifying an entire class. That one declaration also lacks the credibility to be considered by

the Court on this motion. Lyons states that his supervisor allegedly told him to be ready to engage with customers by the start of his shift, thereby requiring him to boot up his computer, log in, and be ready to use various computer programs before his shift was scheduled to start. Lyons' timecards reflect a different reality. Lyons frequently punched in after his 9:00 AM or 11:00 PM shift was scheduled to start. (*See, e.g.*, Miles Decl. Ex. B at 2/12/2018 (9:05 AM punch in); 2/13/2018 (9:05 AM punch in); 2/16/2018 (9:03 AM punch in); 2/20 (11:04 PM punch in).) These time records directly contradict Lyon's allegation that he was required to be, and in fact was, clocked-in and call-ready at the beginning of his scheduled shift.

> **F.    My Pillow's evidence exposes differences between call-center employees and Plaintiffs and confirms that there is neither a "common policy" nor a "common injury" of required and uncompensated work.**

The declaration of Sherry Miles and supporting exhibits contradict the limited evidence offered by Plaintiffs and confirm that there is no company-wide policy or practice requiring or resulting in uncompensated off-the clock work. This declaration establishes that, at most, any pre-shift work was not truly a "requirement" but was, at most, a "suggestion." *Norris III*, 2019 WL 1767408 at *4.

First, My Pillow abides by its policy to pay its employees for all time worked. (Miles Decl. ¶ 9.) To ensure this policy is followed, My Pillow allows its

employees to review their timecards and to alert Sherry Miles of any inaccuracies. (*Id.*) If the employee's timecard does not accurately reflect the amount of time that the employee actually worked, Miles will edit the timecard accordingly. (*Id.*)

Second, call-center employees are trained to log into ADP and to punch in for their shift, and to punch back in after a break, prior to completing any work-related tasks. (Miles Decl. ¶ 10.) During breaks, employees are trained to punch-out and to lock their computer; not to completely log out and shut down the computer. (*Id.*) Similarly, employees are told to punch-out and sign out, but to leave their computers on at the end of their shift. (*Id.*) There is no requirement that call center employees arrive to work a certain amount of time or complete certain tasks prior to the start of their shift. (Miles Decl. ¶ 11.) Employees are not required to download work instructions or computer applications or to read work emails or other notes prior to punching in. (*Id.*)

Finally, the process of punching-in is not as described in the Amended Complaint or Lyons declaration. Upon arrival at the call center, My Pillow's employees walk to their computer station, wake up the computer by shaking the mouse or hitting a key on the keypad, and log in. (Miles Decl. ¶ 12.) Per company policy, computers are to be left on at the end of the employee's shift. (*Id.*) That way,

all that employees need to do is wake up the computer and they can log on. (*Id.*) After logging on, the computer automatically launches both the employee's desktop and Google Chrome, with certain browser tabs pre-populated. (*Id.*) This includes ADP, which automatically appears on the screen after login. (*Id.*) The employee then logs into ADP and punches in to begin receiving pay. (*Id.*) This is all that call-center employees are required to do to punch in. (Miles Decl. ¶ 13.) It takes no more than 20 seconds. (*Id.*)

My Pillow's employees follow a similar procedure when taking a break. (*See* Miles Decl. ¶ 14, Ex. A (reflecting an average time elapse of 16 seconds between entering the building following a break and punching in).) Most employees clock out, lock their computer, and go on break. (Miles Decl. ¶ 14.) Employees are not required to fully close out of all programs, log out of their desktop, or to turn off or reboot their computer prior to going on a break. (*Id.*) When employees return from a break, all that is required is to wake up their computer, log back into their desktop, and punch back in. (*Id.*) Employees do not need to fully restart their computer. (*Id.*) Therefore, Plaintiffs' portrayal of the punch-in process is grossly inaccurate.

### III.   LEGAL STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA authorizes employees to bring a collective action to recover unpaid overtime. 29 U.S.C. § 216(b). "Unlike a Rule 23 class action, under the FLSA, no employee shall be a party to a collective action unless he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014) (internal quotation omitted). Courts therefore have the discretion "to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs" in appropriate cases. *Id.* at 1082; *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991) (noting that the "power [to authorize court-supervised notice] is to be exercised only in appropriate cases, and remains within the discretion of the district court") (internal quotation omitted).

"The fundamental inquiry in determining whether a collective action under Section 216(b) is appropriate is whether or not the plaintiffs are similarly situated." *Saleen v. Waste Management, Inc.* ("*Saleen II*"), Civ. No. 08-4959, 2009 WL 1664451, at *3 (D. Minn. June 15, 2009) (quoting *West*, 2006 WL 1892527 at *7). This showing of being similarly situated, however, must be made with respect to factors relevant

to the violations Plaintiffs allege; not merely with respect to their job duties. *Smith v. Heartland Auto. Servs.*, 404 F. Supp. 2d 1144, 1152-54 (D. Minn. 2005) (concluding that plaintiffs failed to demonstrate that they are similarly situated with respect to the "crucial factors" to be considered in the relevant FLSA liability analysis). Therefore, at the conditional certification stage, plaintiffs must "come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victim of a single decision, policy, or plan." *Saleen II*, 2009 WL 1664451 at *4 (quotation omitted); *Burch v. Qwest Communications Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (same). "A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Saleen II*, 2009 WL 1664451, at *4 (quotation and citation omitted).

In addition to demonstrating a colorable basis for their claims, Plaintiffs must show "that other similarly situated individuals desire to opt in to this case"[4] and "that factual similarities or differences among the putative plaintiffs are such that the case may be properly managed as a collective action." *Saleen II*, 2009 WL

---

[4] *Knutson v. Blue Cross and Blue Shield of Minneso*ta, Civ. No. 08-584 (RHK/JSM), 2008 WL 4371382, at *3 (D. Minn. Sept. 23, 2008).

1664451 at *4 (quotation and citation omitted); *see also West*, 2006 WL 1892527 at *3

(noting that plaintiffs must demonstrate a colorable basis and "that factual

similarities or differences among the putative Plaintiffs are such that the case may

be properly managed as a collective action"). As set forth, *infra*, Plaintiffs fail to

meet each of these requirements.

## IV.   ARGUMENT

**A.   Conditional certification is inappropriate because Plaintiffs failed to present adequate evidence of both opt-in interest in this case and a colorable basis for their claims.**

Before subjecting My Pillow "to the burdens of a collective action, the

plaintiffs must establish a colorable basis for their claim that a manageable class of

'similarly situated' plaintiffs exist." *West*, 2006 WL 1892527 at *9 (internal citation

omitted). "Considering the individualized nature of [Plaintiffs'] alleged violations,

along with the absence of evidence to support the Plaintiffs' conclusory assertion

of widespread violations," Plaintiffs in this case "have failed to demonstrate even

a colorable basis that they were the victim of some common policy or plan, or that

a manageable class exists, which would render a collective action appropriate." *Id.*

Therefore, just as in *West*, Plaintiffs' motion for conditional certification should be

denied.

1. **Plaintiffs failed to establish requisite interest in opting into this litigation.**

Courts in the District of Minnesota "have followed *Dybach* in requiring opt-in interest before conditional certification is granted." *See Wang v. Jessy Corporation*, Civil No. 17-5069 (JRT/HB) ("*Wang II*"), 2019 WL 3574553, at *1 (Aug. 6, 2019) (denying a motion for conditional certification in a wage and hour case because plaintiff "ha[d] not adequately shown that there exist opt-in plaintiffs interested in joining this case"). Plaintiffs fail to make this threshold showing here, where only Deutsch, Jenkins, and Lyons have filed their Consents to Sue with the Court (ECF Nos. 4-5, 30) and where no other call center employees filed declarations in support of conditional certification.[5]

---

[5] The Court should not rely on Plaintiffs' suggestion that other plaintiffs exist because such a practice would

> [R]ender preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated." Under this rationale, any plaintiff who is denied overtime pay may file suit under the FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every employee.

*Parker*, 492 F. Supp. 2d at 1165 (quoting *Smith v. Sovereign Bancorp, Inc.*, No. Civ. A 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003)). Plaintiffs are "not entitled to conditional certification simply to seek out others who might wish to join the action." *Id.* at 1166.

This case is similar to *Knutson v. Blue Cross and Blue Shield of Minnesota*, Civ. No. 08-584 (RHK/JSM), 2008 WL 4371382 (D. Minn. Sept. 23, 2008). In *Knutson*, Judge Kyle denied plaintiffs' motion for conditional certification where, as here, plaintiffs alleged that they "and other customer-service representatives were not paid for work they performed prior to and after their scheduled work shifts, including time spent booting-up and shutting-down their computers . . . ." *Id.* at *1. Judge Kyle denied plaintiffs' motion for conditional certification because only two employees indicated their willingness to prosecute the case and that "is simply not enough." *Id.* at *3.

Similarly, the *Parker* court denied conditional certification when, as here, there were only two opt-in plaintiffs in addition to the named plaintiff. *Parker*, 492 F. Supp. 2d at 1165 (stating that "no purpose [is] served by 'certifying' a collective-action 'class' [that] ultimately would involve no one other than the plaintiff"). In fact, the case against conditional certification is even more compelling here, where the case has been pending since January and, even after eight months, Plaintiffs have failed to gather requisite interest in prosecuting the case. Therefore, "[w]ithout some showing that additional . . . customer service representatives would opt in to this litigation, this is not an 'appropriate case' for conditional

collective-action certification." *Knutson*, 2008 WL 4371382 at *3. The Court may deny the instant motion on this lack of interest to prosecute alone.

### 2.   Plaintiffs fail to establish a colorable basis for their claims.

Plaintiffs postulate that My Pillow required the putative class members "to boot up and log in to their computers prior to being paid. . . . subjecting [the putative class members] to the same illegal pay practices by failing to pay them overtime for certain pre-shift and post-break work." (Plfs. Mem. at 11-12.) My Pillow's policy regarding these allegations is to pay its employees for all time worked. (Miles Decl. ¶ 9.) Indeed, My Pillow provides a mechanism through which employees may correct their time records if they do not accurately reflect the amount of time worked. (*Id.*) Accordingly, Plaintiffs "must submit evidence that the *reason* why the employees were not compensated for [pre-shift and post-break time] is . . . because of a corporate decision to ignore [My Pillow's] published policies and refuse to pay for [such time]." *Thompson v. Speedway SuperAmerica, LLC*, No. 08-CV-1107 (PJS/REL), 2009 WL 130069, at *2 (D. Minn. Jan 9, 2009).

Plaintiffs' offer of proof, however, focuses mainly on the alleged similarities in job duties among the putative class and largely ignores their burden to provide sufficient evidence establishing a colorable basis for their claim that the call center employees were the victims of a single unlawful decision, policy, or plan. Only

three paragraphs of Plaintiffs' twenty-three page brief postulate as to how their evidence establishes a colorable basis for their claims. (*See* Plfs. Mem. at 11-12.) Those three paragraphs summarily conclude that the putative class members "performed similar jobs", "were regularly scheduled to work 40 hours per workweek", and that My Pillow "required them to boot up and log in to their computers prior to being paid." (Plfs. Mem. at 11.) Plaintiffs submit just one declaration in support of these conclusions. Simply put, this is not sufficient to establish a colorable basis for the claim that employees across various job duties, shifts, and supervisors were "uncompensated for 'off-the-clock' work under circumstances similarly to those of the named Plaintiffs." of *Norris v. Bluestem Brands, Inc.* ("*Norris I*"), Memorandum Opinion and Order, ECF No. 148 at 17, filed April 26, 2018 (D. Minn.) (emphasis omitted) (Sokolowski Decl. Ex. A); *see also Chin*, 57 F. Supp. 3d at 1082-83 (noting that courts "usually rely on the pleadings and any affidavits submitted by the plaintiff to determine whether" plaintiffs have established a colorable basis for their claim).

   i. *One declaration is not sufficient to establish a colorable claim of company-wide FLSA violations.*

In order to establish "a colorable basis" for their claims, "plaintiffs must come forward with something more than averments in their complaint in support

of their claim." *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 578 (D. Minn. 2014) (quoting *Lyons v. Ameriprise Financial, Inc.*, Civ. No. 10-503, 2010 WL 3733565, at *3 (D. Minn. Sept. 20, 2010)). The one declaration that Plaintiffs submit, however, fails to adequately support conditional certification because it does not—and cannot—provide personal knowledge of the experiences of other putative class members. *See West*, 2006 WL 1892527 at *6 ("[T]he averments made in support of a Motion for Conditional Certification must be based on personal knowledge . . . and unsupported assertions of widespread violations are not sufficient to meet the Plaintiff's burden.") (internal citation and quotation omitted).

After eliminating the averments which are not based on personal knowledge, the Lyons declaration alleges that one supervisor required one individual to work off-the-clock in violation of My Pillow's policies and trainings. Such a limited averment does not support Plaintiffs' assertion of widespread wage and hour violations resulting from a company-wide policy or plan. *See, e.g., West*, 2006 WL 1892527 at *6 (concluding that averments of six of the potential 240 putative class members "does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan"); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005) (concluding that averments of two

22

employees out of a potential class of 300 were insufficient to allow conditional certification); *Flores v. Lifeway Foods*, Inc., 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (concluding that averments regarding two employees out of fifty did not amount to even a "modest factual showing" of a common policy or plan that violates the FLSA"); *Wang v. Jessy Corporatio*n, Civil No. 17-5069 (JRT/HB), 2018 WL 5617567, at *4 (D. Minn. Oct. 30, 2018) ("Wang I") ("Two affidavits hardly suffice to meet [plaintiffs'] non-onerous burden to show 'a colorable basis' that [they] and the employees [they] seek to represent are similarly situated.").

Plaintiffs cite no cases conditionally certifying a class based solely on the averments of an unsworn complaint and one declaration. Indeed, the plaintiffs in *Wang*—just as the Plaintiffs here—relied on averments from the named-plaintiff and just one opt-in plaintiff. The *Wang* court determined that one declaration was not sufficient to support conditional certification. *Wang I*, 2018 WL 5617567 at *4. Similarly, Plaintiffs' instant attempt to conditionally certify the class based on one declaration should be denied given the lack of "additional factual assurances that other employees at [My Pillow] were denied overtime[.]" *Id.*

   ii.  *Plaintiffs do not offer credible evidence in support of their motion.*

Even were this Court permitted to conditionally certify an entire putative class based on just one declaration and the averments of an unsworn complaint,

the evidence submitted in this case is inaccurate and cannot carry Plaintiffs' burden to establish a colorable basis for their claims.

Although courts do not typically make "credibility determinations or findings of fact with respect to contrary evidence presented by the parties . . . [t]his standard does not mean . . . that courts completely ignore evidence submitted by a defendant resisting conditional certification." *Norris v. Bluestem Brands, Inc.* (*Norris II*), Order, ECF No. 173 at 8, filed August 28, 2018 (D. Minn.) (Sokolowski Decl. Ex. B) (internal quotations and citations omitted); *see also McDermott*, 2018 WL 1865916 at *5 ("While it is true that the Court does not decide the merits at [the conditional certification] stage, the Court is not required to turn a blind eye to evidence in the record that is relevant to the conditional certification determination."). For example, the court need not accept declarations "as credible where [they] contain[ ] a blatant error at best or a substantial falsehood at worse." *Norris II* at 8; *see also Cox v. Entm't U.S.A. of Cleveland, Inc.*, No. 1:13 CV 2656, 2014 WL 4302535, at *2 (N.D. Ohio Aug. 29, 2014) ("[W]hile not dispositive of whether conditional certification is warranted, when coupled with the fact that Plaintiff presented what has proven through limited discovery to be a Declaration rife with false statements of which [the declarant] has no direct knowledge, the Court

cannot help but be concerned as to Plaintiff's motive in filing this case."). "Simply put, this Court may not close its eyes to statements that are blatant errors or indisputably false, and such erroneous inclusions or falsehoods cannot serve to form the basis of a colorable claim." *Norris II* at 9.

Here too, Plaintiffs' inaccurate and limited evidence "cannot serve to form the basis of a colorable claim." *Id*. Moreover, My Pillow's evidence demonstrates that the putative class members were not victims of a common policy, practice, or plan. (*See* Miles Decl. ¶¶ 9-14, Ex. A.) The Court need not, and should not, ignore this evidence. *See Hawkins v. Alorica*, 287 F.R.D. 431, 441 (S.D. Ind. 2012) (noting that, when provided with evidence contradicting the plaintiffs' claims, the court "will not stick its head in the sand and ignore that evidence") (quotation omitted). Therefore, the evidence submitted by My Pillow is sufficient to allow the Court to "conclude[ ] that the allegations before it do not provide a colorable basis that all the putative members of the collective action 'sustained injury from one unlawful policy.'" *Saleen II*, 2009 WL 1664451 at *6 (citation omitted).

### 3.   Courts regularly deny conditional certification motions in call center cases.

Casting aside their burden to establish a colorable basis for their claims, the majority of Plaintiffs' argument recites the legal standard for certification (Plfs.

Mem. at 6-9) and curtly concludes that courts "routinely conditionally certify call center cases because call center jobs are generally homogenous." (Plfs. Mem. at 10.) This conclusion, based on a select number of cases from as long as eight years ago, is irrelevant and inaccurate.

First, this conclusion mischaracterizes the inquiry before the court. This Court is to review the evidence offered by Plaintiffs related to My Pillow's call center and to determine whether Plaintiffs *in this case* presented sufficient evidence that the putative class is a victim of an illegal common policy or plan. The inquiry before the Court is not whether "call centers in general" violate the FLSA. (*See* Plfs. Mem. at 2.)

Second, courts in this circuit and beyond regularly deny motions for conditional certification in call center cases where, as here, plaintiffs fail to meet their evidentiary burden. *See, e.g., Andrews v. Appletree Answering Serv.*, No. 4:11 CV 2227 RWS, 2012 WL 2339322, at *1, 3 (E.D. Mo. June 19, 2012) (denying conditional certification in a call center case when plaintiffs' four declarations lacked personal knowledge of widespread allegations and failed to assert a substantial allegation of company-wide policy); *Anderson v. Wells Fargo Financial, Inc.*, No. 4:11-CV-00085, 2012 WL 12871958, at *1, 4 (S.D. Iowa Feb. 6, 2012)

(denying conditional certification in a call center case when plaintiffs' eight declarations failed to "present a threshold amount of evidence for [the] Court to find that there are similarly situated employees" across the company); *Knutson*, 2008 WL 4371382 at *1 (denying conditional certification in a call center case when plaintiffs "failed to show that 'similarly situated' individuals desire[d] to opt in to [the] litigation"); *see also Norris III*, 2019 WL 1767408 at *4-5 (decertifying class of call center employees when plaintiffs' claims proved demonstrably false).

Moreover, these cases denying certification are more analogous to the instant case than those cited by Plaintiffs. The evidence Plaintiffs submit is a far cry, in both quantity and substance, from the evidence in the cases cited in Plaintiffs' memorandum. *See, e.g., Burch*, 500 F. Supp. 2d at 1185, 1187 (granting conditional certification when over forty putative class members filed consent forms to join the action, plaintiff submitted nineteen declarations, employer agreed that its timekeeping system only recorded the time the employee was taking phone calls and not when the employee was performing other job tasks, and when employer admitted to many of the plaintiffs' other allegations). This is not a case, for example, where Plaintiffs submitted thirty-one affidavits detailing requirements to answer inbound calls and work with customers prior to

punching-in and receiving compensation. *See Williams*, Civ. No. 13-0946, ECF No. 86 at 1, 4 (Rusch Decl. Ex. 4) (Plfs. Mem. at 8). Nor is this a case with twenty-two opt-in plaintiffs who filed declarations detailing similar treatment by their employer. *See Shoots I*, 2015 WL 6150862, at *16 (Plfs. Mem. at 8). Rather, Plaintiffs in this case seek conditional certification based on a generalized view that call centers violate wage and overtime laws and the submission of one declaration. Plaintiffs fail to meet their burden and the instant motion should be denied.

**B.    Plaintiffs' Motion should be denied because class adjudication would render this litigation unmanageable.**

Putting aside Plaintiffs' failure to establish requisite interest and a colorable basis for their claim of a similarly situated class, conditional certification should be denied because class adjudication in this instance would be unmanageable. While the instant motion does not require the Court to analyze whether individual issues predominate over common issues, it does require the Court to analyze whether Plaintiffs have provided a colorable basis for their allegation of a single decision, policy, or plan "which would thus make it sensible to conditionally certify." *Saleen II*, 2009 WL 1664451 at *6. Where, as here, "the collective action requires such significant individual considerations, 'it may be inappropriate for conditional certification.'" *Id.* (quotation omitted) (listing cases where courts

denied plaintiffs' motions for conditional certification where individual considerations defeat a finding of a colorable basis for plaintiffs' claims).

Here, the definition of the class Plaintiffs seek to certify necessitates individual determinations of liability prior to distributing notice, thereby defeating the efficiency furthered by class certification. Conditional class certification would require the parties to inquire into matters such as how many breaks did each putative class member take, how long did it take them to log into ADP and clock in, why did it take one putative class member longer to log into ADP and clock in than it did another, how many hours did each putative class member work each week, and others, prior to distributing notice. As demonstrated by My Pillow's badge-swipe and timecard data, the only way to litigate any one employee's claim is through testimony and evidence regarding that individual employee. *See Norris III*, 2019 WL 1767408 at *5 ("This 'possibility of mini-trials' and presenting 'individualized defenses as to the credibility' of each Named Plaintiff 'renders collective treatment unmanageable.") (quoting *Soderberg v. Naturescape, Inc.*, No. 10-cv-3429 (PAM/JJG), 2011 WL 11528148, at *11 (D. Minn. Nov. 3, 2011). "[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if [the Court] were to overlook [these] facts

which generally suggest that a collective action is improper." *West*, 2006 WL 1892527 at *7  (citing cases denying conditional certification where conditional certification "would be an exercise in futility and wasted resources" given the individualized nature of the claims) (citations omitted).

Therefore, the procedural disadvantages of conditional certification in this case outweigh the procedural advantages, and "this case would not be more orderly and sensibly managed as a nationwide collective action." *See Saleen II*, 2009 WL 1664451 at *9. Just as in *Saleen*, the varied experiences of the putative class members render court-facilitated notice an inefficient method of proceeding. Thus, Plaintiffs' motion for conditional certification and court-facilitated notice should be denied.

## V.   CONCLUSION

Plaintiffs' suggestion that conditional certification should automatically be granted based on My Pillow's operation of a call center and the declaration of a single former employee contradicts well-established legal precedent. (*See* Plfs. Mem. at 10 "Courts routinely conditionally certify calls [sic] center cases because call center jobs are generally homogenous."). "While Plaintiffs' burden is not onerous, Plaintiffs must assert substantial allegations that the putative class

members were the victims of a single decision, policy, or plan." *Andrews*, 2012 WL

2339322 at *3. Plaintiffs failed to do so here and My Pillow respectfully requests

that the Court deny Plaintiffs' motion for conditional certification.


Dated:  August 26, 2020              *s/ Joseph M. Sokolowski*
_____

Joseph M. Sokolowski (#0178366)
Amanda M. Mills (#0397685)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street
Suite 4000
Minneapolis, MN  55402-1425
 (612) 492-70007199
jsokolowski@fredlaw.com
amills@fredlaw.com

***Attorneys for Defendant My Pillow, Inc.***

70547354 v3

31