## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

BRANDON DEUTSCH, individually and
on behalf of all others similarly situated,

        Plaintiff,

    v.

MY PILLOW, INC.,

        Defendant.

Court File No. 20-cv-00318 (SRN-ECW)

**MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND**

## INTRODUCTION

***Two and a half years*** after filing this action, and with just three weeks remaining in the discovery period, Plaintiff Brandon Deutsch ("Plaintiff") seeks to amend his Amended Complaint in a way that will radically expand the scope of this lawsuit. For the past 30 months, the parties have litigated whether Defendant My Pillow ("My Pillow") failed to pay wages to its call center employees who worked 40 or more hours in a workweek. Now, with discovery served and responded to, immense time and resources spent evaluating claims and defenses, multiple unsuccessful settlement attempts, and no time left to serve written discovery, Plaintiff asks the Court to modify the class definition to include ***all*** call center employees, regardless of whether they worked 40 hours.

Fortunately, the Court can easily dispose of Plaintiff's Motion because he does not make any attempt to satisfy the good cause requirement of Rule 16(b). Rule 16(b) requires a party to demonstrate good cause when bringing a motion to amend after the deadline, and Plaintiff acknowledges that deadline has passed. Plaintiff's only attempt to salvage his

claim is by suggesting that the Court's statement in the scheduling order requiring the parties to meet and confer somehow makes his motion timely and absolves him of Rule 16(b)'s requirements. That is not the case.

Even if Rule 16 were satisfied, the Court should not grant leave to amend under Rule 15 because Plaintiff's proposed amendment is futile, unduly prejudicial, and the result of undue delay. Regarding futility, the proposed amendment will cause Plaintiff's state law claims to substantially predominate over his lone federal claim to such an extent that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367. It will also further diverge the Rule 23 class by adding employees who were not entitled to the same breaks as those who worked over 40 hours.

Granting the amendment will unduly prejudice My Pillow because the deadline to serve discovery has passed. My Pillow has proceeded throughout this lawsuit with the understanding that the scope of Plaintiff's claims related to employees who worked 40 or more hours in a week. If the amendment is granted, My Pillow will not be able to serve any discovery on the expanded claims. Plaintiff's delay in bringing this motion further underscores the undue prejudice My Pillow will suffer.

This case was filed in January 2020, and Plaintiff should not be permitted to drastically expand the scope of this case without good cause and on the eve of the discovery deadline. This Court must ensure the just, speedy, and inexpensive determination of this action and deny Plaintiff's motion in its entirety.

## BACKGROUND

## I.   FACTUAL BACKGROUND.

### A.   The Parties.

My Pillow is a Minnesota corporation that sells pillows, bed sheets, mattress toppers, and related products in retail stores and online. (Amended Complaint[1] ("Am. Compl."), Dkt. 31, ¶ 2.) My Pillow employed Plaintiff as a Customer Service Representative ("CSR") from December 2017 through October 2019. (*Id.* at ¶ 15.) As a CSR, Plaintiff was responsible for answering customer calls, selling products, placing customer orders, answering customer questions, and responding to and handling customer complaints. (*Id.* at ¶ 17.)

### B.   Plaintiff's Allegations Against My Pillow.

Plaintiff claims that My Pillow required him to work off-the-clock while he booted up his computer and launched and logged into "all necessary programs" at the start of his shift. (Am. Compl. ¶¶ 19, 22.) He alleges that My Pillow required him to complete these tasks before clocking into My Pillow's timekeeping system, ADP. (*Id.* at ¶ 22.) If he clocked in before the start of his scheduled shift, he claims My Pillow "refused to recognize

---

[1] The original Complaint was filed on January 24, 2020. (Dkt. 1.) Plaintiff's Amended Complaint was filed on June 17, 2020. (Dkt. 31.) Plaintiff did not file a proposed Second Amended Complaint with the instant motion as required by the Local Rules. *See.* L.R. 15.1 ("Any motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows — through redlining, underlining, strikeouts, or other similarly effective typographic methods — how the proposed amended pleading differs from the operative pleading.").

pre-shift time as compensable." (*Id.* at ¶ 24.) He also alleges that he was not paid for the time he spent waiting for ADP to load after he returned from a break. (*Id.* at ¶ 33.)

Plaintiff estimates that the process of getting to his workstation, booting up his computer, launching and logging into programs, and clocking in at the start of his shift took "approximately eight to fifteen minutes." (*Id.* at ¶ 22.) He further calculates that he "had to wait 1-2 minutes" for ADP to load each time he returned from a break, resulting in a minimum additional 3-6 minutes per workday of uncompensated time. (*Id.* at ¶¶ 31-34.) According to Plaintiff, therefore, My Pillow's timekeeping system resulted in 11 to 21 minutes of uncompensated work per shift.

### C. Plaintiff Pleads His Allegations on Behalf of Employees Working 40 or More Hours Per Week.

On January 24, 2020, Plaintiff filed a Class and Collective Action Complaint against My Pillow, both on his own behalf and on behalf of a "FLSA Collective Class" and a "Minnesota Class." (Dkt. 1.)

It is clear from the Amended Complaint that Plaintiff intended this case to be a Fair Labor Standards Act ("FLSA") overtime case. His "Introduction" to the Amended Complaint describes that My Pillow "regularly employed Plaintiff and other similarly situated current and/or former employees to work full-time, scheduling Plaintiff and others similarly situated for forty (40) hours per week" and that My Pillow's alleged practice of employing CSRs to work off-the-clock "resulted in Plaintiff and other similarly situated former and/or current employees not being paid for all overtime hours worked, in violation of the FLSA." (Am. Compl. ¶ 4.) When describing himself in the "Parties" section, Plaintiff

states: "Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and his Consent to Sue is attached hereto as Exhibit A." (*Id.* at ¶ 14.) Plaintiff further alleges that: "Whether Plaintiff's total workweek hours were forty (40) or in excess of forty (40), Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of his job as a Customer Service Representative." (*Id.* at ¶ 19.) Consistent with this intent, Plaintiff limited his definition of the "FLSA Collective Class" and the "Minnesota Class" to only include employees who worked 40 or more hours per week. (*Id.* at ¶¶ 46, 51.)

Count I of the Amended Complaint alleges that My Pillow violated the FLSA for failing to pay overtime wages for all hours worked in excess of 40 hours per workweek. (*Id.* at ¶ 70.) Count I is brought on behalf of "the FLSA Collective Class," defined as:

> All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who worked forty (40) or more hours per week and were not paid for off-the-clock work.

(*Id.* at ¶ 46.) This claim has since been conditionally certified with an amended class definition. (Order on Conditional Certification, Dkt. 55.)

Counts II and III are brought under Minnesota law "on behalf of the Minnesota Class." Plaintiff modified the definition of the "Minnesota Class" between his original Complaint and the Amended Complaint,[2] and now seeks to modify it a third time:

---

[2] Plaintiff's Motion to Amend, and his Memorandum in Support of his Motion, claims the "current" operative definition of the Minnesota Class is the definition used in the original Complaint. Plaintiff does not appear to realize that he already amended the definition of the Minnesota Class when he filed his Amended Complaint in June 2020.

**Definition of "Minnesota Class" in the Original Complaint/Definition Plaintiff Claims is the "Current" Class Definition:**

All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who worked forty (40) or more hours per week and were not paid for off-the-clock work.

**Definition of "Minnesota Class" in the Amended Complaint:**

All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time from May 6, 2017 until the conclusion of this litigation who worked forty (40) or more hours per week and were not paid for off-the-clock work.

**Definition of "Minnesota Class" Requested in the Motion to Amend:**

All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who were not paid for all hours worked.

(Compl. ¶ 41; Am. Compl. ¶ 51; Dkt. 87.)

Count II alleges My Pillow violated the Minnesota Payment of Wages Act ("MPWA") by "failing to compensate Plaintiff and the Minnesota Class for the time spent on the off-the-clock preliminary activities[.]" (Am. Compl. ¶ 78.) Count II does not allege any MPWA violations other than off-the-clock work performed by Plaintiff and those who worked 40 or more hours per week. (*See id.* at ¶¶ 75-80.) Plaintiff seeks damages for himself and the Minnesota Class. (*Id.* at ¶ 80.)

Count III alleges that My Pillow violated the Minnesota Fair Labor Standards Act ("MFLSA") by "failing to record each hour Plaintiff and the Minnesota Class worked." (*Id.* at ¶ 83.) Plaintiff claims that My Pillow's policies prevented Plaintiff and the Minnesota Class from recording work they performed, thereby failing to keep records of

all hours worked. (*Id.*) Plaintiff seeks damages for himself and the Minnesota Class. (*Id.* at ¶ 84.) Again, this claim only asserts that My Pillow failed to keep legally required records for those who worked 40 or more hours in a week. (*See id.* at ¶¶ 81-84.)

Finally, Count IV is purportedly brought to seek "Commissioner's Remedies" (referring to the Commissioner of Labor and Industry) for My Pillow's alleged violations of the MPWA. Plaintiff pled the claim "in the alternative" in the event My Pillow argues that only the Commissioner may enforce remedies as a class. (*Id.* at p. 12 fn. 1.) Plaintiff claims he is entitled to seek a civil penalty and injunctive relief on the Commissioner's behalf. (*Id.* at ¶ 91.) Like Counts II and III, Plaintiff limited Count IV to the Minnesota Class: "the Minnesota Class—acting in their capacity to enforce the Commissioner's remedies—seeks an order from this Court enjoining Defendant from its continued violation of the MFLSA and for an award of civil penalties." (*Id.* at ¶ 59 (emphasis added.))

## II.   PROCEDURAL HISTORY.

After service of the original Complaint on January 24, 2020, the parties engaged in informal discovery. My Pillow produced badge-swipe and timecard records to show that the time elapsed between when employees entered the building and when they punched in was *de minimis*. (Memorandum of Law in Opposition to Motion for Conditional Certification, Dkt. 48, pp. 3-4.) My Pillow produced this information in the hope that Plaintiff would dismiss his claims. (*Id.*) The parties kept the Court apprised of their progress. (*See* May 11, 2020 Status Conference, Dkt. 28.)

Rather than dismiss the action, Plaintiff filed an Amended Complaint on June 17, 2020. (*See generally* Am. Compl.) The Amended Complaint modified the definition of the

Minnesota Class, as previously noted, and added the allegation that employees were not compensated for the one to two minutes waiting for ADP to load after they returned from a break. (*Id.* at ¶¶ 31-40.) My Pillow filed its Answer to the Amended Complaint on July 1, 2020. (Dkt. 33.)

On August 5, 2020, Plaintiff filed a motion for conditional certification of his FLSA claim under 29 U.S.C. § 216(b). (Dkt. 35.) Plaintiff modified the definition of the FLSA Collective Class as part of the motion but retained the limitation that it encompassed only those who worked more than 40 hours per week. (*Compare* Dkt. 35 *with* Am. Compl. ¶ 36.) My Pillow responded to the motion on August 26, 2020. (Dkt. 47.)

While the motion was pending, on August 6, 2020, the parties submitted their Joint Rule 26(f) Report and Proposed Scheduling Order. (Dkt. 41.) The parties represented that they "do not anticipate amending their pleadings or adding additional parties at this time" and made clear that the only unknown regarding the scope of discovery related to Plaintiff's pending Motion for Conditional Certification. (*Id.* at pp. 3-4.) They agreed that all motions seeking to amend the pleadings would be due 30 days following the denial of the Certification Motion, or 30 days following the close of the notice period. (*Id.* at 7.)

The Court issued its Pretrial Scheduling Order on August 26, 2020. (Dkt. 47.) The Order established that motions seeking to amend the pleadings would be due 30 days following the denial of Plaintiff's motion, or 30 days following the close of the notice period. (*Id.* at 4.) Following that deadline, the Court ordered the parties to meet and confer regarding any proposed amendments. (*Id.*)

On December 15, 2020, the Court granted the Motion for Conditional Certification with a modified definition of the class to:

> All current and former Customer Service/Sales Representative employees, or other job titles performing the same or similar job duties, who worked more than forty hours per week for My Pillow at any time in the last three years and were not paid overtime for every hour worked over 40 in a workweek where the workweek included unpaid time for pre-shift and/or post-break time spent booting up and/or logging in to computers and computer applications before being able to clock in and begin being paid.

(Dkt. 55, p. 31.) The Court established a 90-day Notice Period. (*Id.* at p. 33.) My Pillow provided a class list to Plaintiff containing 121 employee names. (Declaration of Sherry Miles ("Miles Decl.") ¶ 3.) The opt-in notice period closed on April 21, 2021. (*See* April 26, 2021 Email Letter to Magistrate Wright (explaining the parties' agreement to extend the notice period.) Therefore, under the Court's deadline, Plaintiff had 30 days—through May 21, 2021—to amend the Complaint.

By the close of the notice period, 11 individuals filed a Consent to Sue. (Dkts. 5, 30, 56-60, 62-65.) In accordance with the previous scheduling order, the parties submitted their Joint Discovery Plan on May 5, 2021. (Dkt. 66.) They agreed the case would not be presented through representative evidence. (*Id.*) The Court issued its Post-Conditional Certification Pretrial Scheduling Order on May 10, 2021. (Dkt. 70.)

The parties appeared before the Court in August 2021 for a status conference, and the Court scheduled a subsequent status conference to occur in October. (Dkt. 74.) In advance of the October status conference, the parties requested a continuance. (*Id.*) In support of the continuance, they noted that My Pillow had made significant data available in furtherance of early resolution, and the parties were working cooperatively to provide

Plaintiff with certain requested information so he could finalize a settlement demand. (*Id.*) The Parties subsequently engaged in private mediation which was unsuccessful. (Dkt. 83.)

## III.   <u>THE CURRENT SCHEDULE.</u>

On March 25, 2022, the Parties filed a Joint Stipulation to amend the operative scheduling order. (Dkt. 83.) The parties requested an extension to allow them to complete discovery, estimating that seven months was needed. (*Id.* at ¶ 3.) They did not request an extension to the deadline to amend, which had lapsed nearly a year prior, on May 21, 2021. (*See* Dkt. 47.)

On March 30, 2022, the Court issued the Amended Post-Conditional Certification Pretrial Scheduling Order, which is the current operating scheduling order. (Dkt. 85.) However, while the new scheduling order modified some dates, it made clear that the Court's previous Pretrial Scheduling Order (Dkt. 47) remained in effect as to deadlines for motions to amend the pleadings. (*See* Dkt. 85 at 5.) Therefore, the deadline to amend the pleadings remained May 21, 2021.

While the Court found good cause to extend the schedule, it did not find good cause to extend the schedule for seven months "in view of the length of time this case has been pending and the length of time (over seven months) the parties have spent on settlement discussions." (*Id.* at p. 1.) The Court emphasized the importance of diligently working to meet its established deadlines, cautioning:

> simply because this schedule establishes a deadline for filing a particular non-dispositive motion does not mean that a motion brought by that deadline will automatically be considered to have been timely filed if the relief sought by the motion is likely to impact the parties' ability to meet the other

deadlines in this Order and if it appears that with the exercise of diligence, the motion could have been brought sooner.

(*Id.* at p. 2.)

The Court established a deadline of **July 29, 2022** to complete fact discovery. (*Id.* at p. 3.) As of the date of filing this Response, the deadline for serving written discovery has passed. All written discovery had to be served by **June 29, 2022** to permit the responding party 30 days to respond. *See* Fed. R. Civ. P. 33(b)(2) (30 days to answer or object to interrogatories); Fed. R. Civ. P. 34(b)(2)(A) (30 days to respond to requests for the production of documents); Fed. R. Civ. P. 36(a)(3) (30 days to answer or object to requests for admission).

The non-dispositive motion deadline requires all motions and supporting documents relating to discovery to be filed and served before **August 12, 2022**.

## IV.   PLAINTIFF'S PROPOSED AMENDMENT.

In the instant motion, Plaintiff seeks to modify his definition of the "Minnesota Class" for the third time. There is no dispute that the proposed amendment will include previously-excluded employees who did not work over 40 hours in a workweek. (*See* Plf. Mem. In Support of Mot. to Amend ("Plf. Mem."), Dkt. 89, at 5.)

As a threshold matter, Plaintiff does not seem to realize that he previously amended the class definition to narrow the relevant time period. Plaintiff's Motion to Amend and his supporting memorandum both cite the definition of the Minnesota Class included in the *original* Complaint, rather than the Amended Complaint, as the operative class definition:

**Definition of "Minnesota Class" in Original Complaint/Definition Plaintiff Claims is the "Current" Class Definition:**

All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., <u>at any time during the last three years</u> who worked forty (40) or more hours per week and were not paid for off-the-clock work.

**Definition of "Minnesota Class" in Amended Complaint:**

All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., <u>at any time from May 6, 2017 until the conclusion of this litigation</u> who worked forty (40) or more hours per week and were not paid for off-the-clock work.

**Definition of "Minnesota Class" Requested in Instant Motion to Amend:**

All current and former Customer Service Agents, Telephone Sales Agents, or other job titles performing similar job duties employed by My Pillow, Inc., at any time during the last three years who were not paid for all hours worked.

(Compl. ¶ 41 (emphasis added); Am. Compl. ¶ 51 (emphasis added); Dkt. 87.)

The proposed amendment would enlarge the relevant time period by over three months (starting on January 24, 2017, rather than May 6, 2017). Ostensibly because he is unaware of his previous amendment, Plaintiff does not provide any explanation for the change. (*See generally* Plf. Mem.) However, it is significant. With an estimated 100 employees employed at any given time, four shifts operating per day, and employees clocking in and out multiple times per day (at the start and end of the shift, for lunch, and for breaks), an additional three months added to the time period will result in tens of thousands of additional time records to scrutinize. (*See* Dkt. 55 p. 2. fn. 3 (summarizing number of employees.))

Plaintiff also seeks to bring all employees—not just those who worked in excess of 40 hours—into this lawsuit. A significant number of call center employees never worked a single overtime shift during the relevant period and have never been a part of this case. As previously noted, the class list My Pillow provided to Plaintiff following conditional class certification included 121 employees. This list only included employees who worked at least one week of overtime during the relevant time period. (Miles Decl. ¶ 3.) There were an additional 77 employees (40% of the total) who never worked a single overtime shift and therefore were not included on the list. (*Id.*) Since January 24, 2017, My Pillow has employed approximately 260 individuals in its call center (*id.* at ¶ 2), and the proposed amendment would bring them all into the class.

Finally, if the Minnesota Class is expanded as Plaintiff requests, it will be significantly larger than Plaintiff's federal claim. Only 11 individuals opted in to the lawsuit following the notice period. This represents less than 5% of the 260 employees who would potentially be included in Plaintiff's amended definition of the Minnesota Class.

## **LEGAL STANDARD**

There is no absolute right to amend a pleading. *Hammer v. Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003). While Federal Rule of Civil Procedure 15(a) states that leave to amend should be "freely given when justice so requires," leave is appropriately denied where there are compelling reasons such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the non-moving party, or futility of the amendment. *Reuter v. Jax Ltd., Inc.*, 711 F.3d 922 (8th Cir. 2013).

In addition, Rule 16(b) guides the court's issuance and modification of pretrial scheduling orders. The Rule provides that, unless exempted by local rule, "the district judge . . . must issue a scheduling order," which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1), (3)(A). Once a deadline to amend is established, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The interplay between Rule 15 and Rule 16 is settled in this Circuit: "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). The good-cause standard established in Rule 16(b) is less liberal than the standard under Rule 15(a). *Id.*

In the context of a Motion to Amend to assert class claims, "courts seem to apply a heightened rule 15 standard, because they incorporate a preliminary rule 23 evaluation into it, and a more lenient rule 23 analysis in assessing the futility of the amendment." *Gewecke v. US Bank N.A.*, No. 09-CV-1890 (JRT/LIB), 2011 WL 13136318, at *3 (D. Minn. Aug. 31, 2011) (quoting *Lymon v. Aramark Corp.*, No. CIV 08-0386, 2009 WL 520285, at *3 (D.N.M. Dec. 12, 2009)). To meet this standard, the plaintiff must allege enough facts from which the court could reasonably infer the mandatory prerequisites of Rule 23(a) have been met—in other words, whether the claims created by the amendment would withstand a motion to dismiss for failure to state a claim. *See Gewecke*, 2011 WL 13136318, at *3 (explaining that the Rule 12(b)(6) standard can be applied, analogically, to the question of

whether the Amended Complaint describes a class that could be certified under the tenets of Rule 23).

## ARGUMENT

## I.   PLAINTIFF DOES NOT DEMONSTRATE GOOD CAUSE TO AMEND THE COMPLAINT AS REQUIRED BY RULE 16(B).

Plaintiff does not address the good cause standard required by Rule 16(b) and, for this reason alone, his motion must be denied.

Plaintiff acknowledges that the deadline for a Motion to Amend has passed. (Plf. Mem. 2.) Yet, he claims his motion is "timely" because "The Court's August 26, 2020 Pretrial Scheduling Order provides that after the deadline for motions to amend the pleadings 'the parties will meet-and-confer regarding any proposed amendments to the pleadings during the course of discovery.'" (*Id.*) Plaintiff's suggestion that the Court's reminder to the parties regarding their meet-and-confer obligations somehow tacitly authorizes his motion and negates the mandatory application of Rule 16 misses the mark.

Rule 16 is not permissive. It required the Court to issue a scheduling order with four deadlines: to join other parties, amend the pleadings, complete discovery, and file motions. The Court accordingly issued an order establishing a deadline to amend the pleadings tied to the resolution of Plaintiff's then-pending Motion for Class Certification. (Dkt. 47.) Although the Court also included a comment requiring the parties to meet-and-confer regarding any subsequent proposed amendments, it cannot be the case that this statement

invalidated the amendment deadline the Court established in the immediately preceding sentences.[3]

Application of Rule 16(b) when a motion to amend falls outside the scheduling deadline "is not optional." *Sherman*, 532 F.3d at 716. And Plaintiff fails to satisfy the rule's requisite good-cause inquiry. He does not provide *any* argument that he acted diligently in seeking amendment. *See Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) ("The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."); Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). His lack of justification, by itself, warrants denial of his motion. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming district court's denial of the plaintiff's motion to amend because she provided no reason why the amendment could not have been made earlier or why it was filed so late).[4]

---

[3] The Court's inclusion of an obligation to meet and confer was consistent with the posture of the case—namely, that any further amendments were not even being contemplated by the parties. Prior to issuance of the scheduling order, Plaintiff had already filed an amended complaint and represented in the Joint Rule 26(f) Report that neither party "anticipate[d] amending their pleadings or adding additional parties at this time." (Dkts. 31, 41.)

[4] If the movant cannot prove he has been diligent in meeting the scheduling order's deadlines, the Court need not consider any other factors. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was no need to explore beyond the first criterion of diligence because the record clearly demonstrated that the plaintiff made only minimal efforts to satisfy the scheduling order's requirements). But even if Plaintiff established diligence, My Pillow will be prejudiced if the amendment is granted as explained in Section II.B., *infra*. *See Sherman*, 532 F.3d at 717 (stating that prejudice to

Plaintiff's primary argument is that other courts have certified Rule 23 classes with similar definitions, and that there "is no requirement that the Rule 23 Minnesota Class can recover under their MPWA and MFLSA claims only if they worked over 40 hours in a workweek." (Plf. Mem. 5.) This certainly is not "good cause" (nor does Plaintiff contend it is). These pleas are also ironic considering that *Plaintiff is the one who defined the class in the first place*. *See Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1033 fn. 12 (D. Minn. 2007) (declining request to expand the class definition after expiration of the deadlines for filing motions to amend and non-dispositive motions, holding that "Plaintiffs are the masters of their Complaint and by its express terms the class definition has been established"). The fact that other courts have certified broader definitions, or that the law would permit additional individuals to seek recovery, does not justify Plaintiff's attempt to amend his Amended Complaint at this juncture. If anything, it shows that Plaintiff should have defined the class differently from the outset.[5] While Plaintiff may regret his decision, he cannot drastically change his case now.

Plaintiff fails to show good cause to modify the scheduling order and his motion to amend must therefore be denied.

---

the nonmovant resulting from modification of the scheduling order may also be a relevant factor, although it is generally not considered if the movant has not been diligent).

[5] The cases Plaintiff cites were decided long before he defined the Minnesota class. The "instructive" decision in *Qwest*, which involved alleged off-the-clock time spent booting up computers at the start of a shift, was issued in 2009. *See Burch v. Qwest Commc'n Intern., Inc.*, 677 F. Supp. 2d 1101, 1127 (D. Minn. 2009). *Cruz* was issued over four years before Plaintiff filed this action. *See Cruz v. TMI Hosp., Inc.*, No. 14–cv–1128, 2015 WL 6671334, at *13 (D. Minn. Oct. 30, 2015).

## II.   <u>PLAINTIFF FAILS TO SATISFY THE RULE 15 STANDARD.</u>

Even if Plaintiff satisfied Rule 16(b)'s stringent requirements, or if the Scheduling Order's deadline to amend is not appropriately considered a Rule 16 deadline, the Court should not grant Plaintiff leave to amend under Rule 15. The amendment is futile, prejudicial to My Pillow, and is a result of undue delay.

### A.   **The Amendment is Futile Because, If Granted, the Court Must Decline to Exercise Supplemental Jurisdiction.**

The proposed amendment is futile because it will cause Plaintiff's state law claims to predominate over the FLSA claim to such an extent that the Court should decline to exercise supplemental jurisdiction and dismiss the claims or remand them to state court.

Courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The justification for supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants[.]" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). When these factors are not present, "a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* at 726. The Supreme Court encourages courts to avoid "needless decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726; *see also Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) ("We stress the need to exercise judicial restraint and avoid state law issues wherever possible." (citation omitted)).

Even if a claim forms part of the "same case or controversy," courts may decline to exercise supplemental jurisdiction where:

(1)   the claim raises a novel or complex issue of State law,

(2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)   the district court has dismissed all claims over which it has original jurisdiction, or

(4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(b).

While subsection (b) is permissive, "[i]f it appears that state issues substantially predominate, courts have tended towards dismissing said state law claims without prejudice, to be left for resolution by the state courts." *Hussein v. Essentia Health*, No. 19-CV-46 (JNE/LIB), 2019 WL 5150033, at *7 (D. Minn. Aug. 6, 2019), report and recommendation adopted, 2019 WL 4565554 (D. Minn. Sept. 20, 2019), aff'd, 2020 WL 1918918 (8th Cir. Jan. 21, 2020). The decision whether to exercise supplemental jurisdiction remains open throughout the litigation. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1287 (8th Cir. 1998).

When considering if state law claims substantially predominate, "the usual question is whether the state claims differ from federal claims." *Nerland*, 564 F. Supp. 2d at 1028. In cases alleging wage and hour violations, courts also focus on the proportion of state class members to federal FLSA plaintiffs. *Id.* Where the number of state class members is substantially greater than the number of federal plaintiffs, courts have exercised discretion

and declined supplemental jurisdiction. *Id.* at 1028-1029 (citing cases). Under each of these factors, Plaintiff's proposed amended state law claim will substantially predominate over his FLSA claim.

Plaintiff's proposed amendment will result in drastically different state and federal claims. The scope of Plaintiff's FLSA claim is limited to whether My Pillow failed to pay 12 employees (Plaintiff plus 11 opt-ins) the federally-mandated overtime premium for hours worked in excess of 40 hours. Because the claim is limited to overtime pay, unless an employee exceeded 40 hours in a workweek, any other unpaid time is irrelevant.

As a result, to resolve the claim, the fact-finder does not need to consider any alleged delays clocking in for any week in which the 12 employees' hours did not exceed 40. To put this into perspective, Plaintiff worked approximately 94 weeks during his employment and, of those 94 weeks, he only worked more than 40 hours in 5 of those weeks (5.3%). (Miles Decl. ¶ 5.) That means over 94% of Plaintiff's time records, clock in times, door swipes, time correction requests, and schedules do not need to be analyzed because My Pillow could not have possibly failed to pay him overtime pay in those weeks. The weeks in which the remaining 11 opt-ins did not work 40 hours are similarly easily removed for purposes of discovery, disposition, trial, and damages.

The state law claims, expanded by Plaintiff's proposed amended Minnesota Class definition, diverge radically from the FLSA claim. My Pillow estimates that it has employed 260 employees during the relevant time period. (Miles Decl. ¶ 2.) The FLSA class represents less than 5% of this number. The difference in the number of employees alone supports declining to exercise supplemental jurisdiction. *See De Asencio v. Tyson*

*Foods, Inc.*, 342 F.3d 301 (3rd Cir. 2003) (exercise of supplemental jurisdiction was an abuse of discretion where 450 plaintiffs proceeded under the FLSA but the state class members numbered nearly 4,100); *Shoots v. iQor Holdings US Inc.*, 325 F.R.D. 253, 269 fn. 11 (D. Minn. 2018) (it would be appropriate to decline supplemental jurisdiction where there were 16,020 putative state members compared to 3,483 FLSA members if the court were to rule on supplemental jurisdiction).

The breadth of Plaintiff's state claims will dominate his FLSA claim. The FLSA claim is limited to the weeks in which 12 employees were potentially denied overtime pay. Conversely, the state law claims implicate every single clock in, on every single shift, worked by every single call center employee. *See Gibbs*, 383 U.S. at 726-727 ("if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.") If Plaintiff prevails, damage proceedings would likely entirely relate to his state claims. *De La Riva v. Houlihan Smith & Co.*, 848 F. Supp. 2d 887, 891 (N.D. Ill. 2012) (the necessity for potentially cumbersome post-trial proceedings devoted entirely in favor of the state wage claims "weighs heavily in favor of finding substantial predominance.")). Proportionally, resolution of the state claims will overshadow Plaintiff's FLSA claim and the Court should leave those claims to the state court.

If the proposed amendment is granted, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss or remand them to

state court. Otherwise, the state claims will substantially dominate over the FLSA claim. Plaintiff's proposed amendment is therefore futile and should not be permitted.

**B.      The Amendment will Unduly Prejudice My Pillow Because Plaintiff Delayed this Motion and it is Too Late to Serve Discovery.**

Leave to amend should also be denied because Plaintiff's proposed amendment will unfairly prejudice My Pillow. For the past 30 months, this case has been about whether My Pillow properly paid and tracked the hours of employees who worked in excess of 40 hours in a week. My Pillow has operated on the understanding that part-time employees and those who never worked 40 hours in a week were not part of this case. That understanding carried through its case evaluation, valuation, and decisions it made relating to discovery.

In these circumstances, what is prejudicially unfair to My Pillow is that it is too late to serve discovery. My Pillow made the tactical decision not to serve any Interrogatories, Requests for the Production of Documents, or Requests for Admission on Plaintiff. Instead, it served deposition notices for all 12 plaintiff/opt-ins and intended to prove its case that way. My Pillow is left without any opportunity to obtain discovery as to Plaintiff's proposed exponentially-expanded class.

To date, My Pillow produced only the time records, schedules, and personnel files for Plaintiff and the opt-ins. It has not produced that information for any other employee. My Pillow also objected to certain discovery requests on the grounds that the requests were not calculated to lead to the discovery of admissible evidence. If the case is enlarged to the extent Plaintiff requests, My Pillow expects Plaintiff will dispute those objections. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) ("[W]hen late tendered

amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved."); *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052 (8th Cir. 2005) (denying the third motion to amend, despite being timely, that had the potential to substantially expand and delay the litigation, and discovery was "well underway.").

Plaintiff's delay in filing this motion further supports a finding of undue prejudice. *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, No. 18-CV-2863 (DWF/ECW), 2020 WL 5229677, at *11 (D. Minn. Sept. 2, 2020) (collecting cases and holding that "[c]ases finding undue prejudice based on discovery burdens, moreover, often involve movants who have delayed unduly in bringing the amendments into the case."); *United States v. Bos. Sci. Corp.*, No. 11-CV-2453 (JNE/SER), 2018 WL 5617565, at *6-8 (D. Minn. Oct. 30, 2018) (finding undue delay and presence of supplemental jurisdiction issues; concluding "[t]his grim prospect [of all-consuming discovery on a new claim], combined with the other prejudicial results should the proposed amendment be granted, requires denial of Higgins' motion").[6]

---

[6] While Plaintiff claims "courts have permitted the amendment of class definitions as part of a motion to amend the pleadings" (Plf. Mem. 4), the cases on which he relies primarily involve amendments requested early in the proceedings, and few significantly expand the number of defendants. *See U.S. ex rel. Terry v. Wasatch Advantage Grp.*, LLC, 327 F.R.D. 395, 406 (E.D. Cal. 2018) (defendants failed to show amendment would cause undue delay or prejudice, and had not substantially relied upon the definition sought to be amended); *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 640 (D.N.M. 2017) (plaintiffs' delay resulted from waiting for the court to issue a decision on the original class definition; modified definition was not the result of a motion to amend); *Harris v. Rainey*, 299 F.R.D. 486, 495 (W.D. Va. 2014) (amendment was requested early in proceeding and defendants

There is no question that Plaintiff delayed seeking this second amendment to his complaint. This case has been litigated for 30 months and only 22 days remain in the discovery period. The deadline to amend lapsed over a year ago. The deadline to serve written discovery lapsed. The first deadline related to expert disclosures has also passed. Plaintiff previously amended his Minnesota Class definition as part of his Amended Complaint over two years ago and provided no explanation for why he could not have brought this motion earlier. Plaintiff's delay, and the prejudicial result it will have on My Pillow which cannot serve additional discovery, warrants denial of Plaintiff's motion.

In addition to discovery, My Pillow will be prejudiced by the additional time and resources it will need to devote to case evaluation, valuation, and potential motion practice. If Plaintiff's motion were granted, every clock in and out for every employee must be scrutinized, rather than being limited to employees who worked 40 or more hours. My Pillow will need to consider bringing a motion regarding the Court's supplemental jurisdiction for the reasons discussed above. My Pillow has worked diligently to meet the Court's deadlines but it is simply not realistic to believe that the existing deadlines can remain in place if the scope of this case is expanded as Plaintiff requests.

---

did not argue undue delay or prejudice); *Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 5:08cv01, 2009 WL 10676946, at *1 (S.D. Miss. Mar. 31, 2009) (granting amendment in part based on "the relatively early discovery stage of this case"); *Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152 (E.D. Pa. 1998) (granting motion to certify but denying motion to amend class definition as moot); *Andrews v. Plains All Am. Pipeline, L.P.*, No. CV 15-4113, 2019 WL 6647928, at *5–6 (C.D. Cal. Nov. 22, 2019) (amending class definition to conform to newly-discovered evidence).

It is too late for My Pillow to serve discovery. Expanding the class definition as Plaintiff requests will unfairly prejudice My Pillow, exponentially increase the scope of this case, and delay its resolution. For this reason, leave to amend under Rule 15 should be denied.

### C.    The Amendment Would Cause the Rule 23 Claims to Further Diverge.

Finally, Plaintiff undertakes considerable effort to argue that his proposed amendment satisfies the requirements of Rule 23. However, the proposed amendment only *reduces* the commonality and typicality requirements and is therefore futile.

Expanding the class to include employees who did not work at least 40 hours significantly impacts the commonality and typicality of the purported class claims. Under Minnesota law, employees who work less than eight hours in a shift are not entitled to a meal break. *See* Minn. Stat. § 177.254, subd. 1. Employees are also only entitled to a rest break to utilize the restroom for each four consecutive hours of work. *See* Minn. Stat. 177.253, subd. 1. The employees Plaintiff seeks to add to the class—employees who did not work at least 40 hours in a week—likely were not entitled to meal breaks and took fewer rest breaks. This reduces or entirely eliminates any claims for time allegedly spent waiting to clock in after returning from a break. It also presents the issue of whether employees can recover for time spent clocking in after a break if they were not entitled to a break in the first place.

Plaintiff also cites My Pillow's discovery responses to argue that the named plaintiffs are representative of the class. (Plf. Mem. 10.) Even a cursory review of those responses shows that the Requests for Admission were tailored to Plaintiff and the opt-ins,

*i.e.* those who worked over 40 hours and who claim to be owed overtime under the FLSA. Those responses have no bearing here.

Permitting the amendment invites further dissonance into a class that already cannot meet the Rule 23 requirements. Adding employees who did not work at least 40 hours to the group reduces commonality because the number of breaks, if any, will vary widely from the employees who worked 40 or more hours in a workweek. The amendment is therefore futile.

## **CONCLUSION**

Plaintiff fails to satisfy the mandatory good cause requirement established by Rule 16(b) and his motion must be denied on that ground alone. Even if it were met, leave to amend should not be granted under Rule 15 because the proposed amendment is futile, the result of undue delay, and will unfairly prejudice My Pillow. For all the reasons described herein, My Pillow respectfully requests the Court deny Plaintiff's motion in its entirety.

Dated: July 7, 2022

*s/ Janet M. Olawsky*

Joseph M. Sokolowski (#0178366)
Janet M. Olawsky (#0393311)
Amanda M. Mills (#0397685)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
(612) 492-70007199
jsokolowski@fredlaw.com
jolawsky@fredlaw.com
amills@fredlaw.com

***Attorneys for Defendant My Pillow, Inc.***

76505097 v1

26