## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BRANDON DEUTSCH, individually and on behalf of all similarly situated individuals, | Case No. 20-CV-00318 (SRN-ECW) |
| Plaintiff, | Judge Susan Richard Nelson |
| v. | **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |
| MY PILLOW, INC., | |
| Defendant. | |

## INTRODUCTION

The Court should grant Plaintiffs' Motion for Class Certification because Plaintiffs' claims under the MPWA present common questions of fact and law that should be resolved as part of a Rule 23 class action. Plaintiffs and the proposed Rule 23 Class seek unpaid straight time wages at their agreed upon rates of pay under the MPWA and civil penalties on behalf of the Minnesota Commissioner of Labor and Industry.

## FACTUAL BACKGROUND

Plaintiffs rely on their statements of the factual record as outlined in their Motion for Summary Judgment (ECF 123), Opposition to Defendant's Motion for Summary

Judgment (ECF 151), and Motion for Class Certification (ECF 130).[1] Plaintiffs respond to

a few of Defendant's statements below.[2]

| | **Defendant's Statement** | **Plaintiffs' Response** |
|---|---|---|
| 1. | Deutsch's disciplinary history at My Pillow also includes a suspension in September 2018 for sleeping at his desk. | "I was not sleeping…I was putting my leg up because I have 23 screws and three plates in my ankle…I never missed a call…they reviewed my call log, and I didn't miss any calls at all." (Deutsch Dep. 57:17–58:4). |
| 2. | Deutsch has been convicted of a number of felonies for domestic assault and driving while impaired. | Mr. Deutsch has been convicted of two felonies, both arising from the same domestic assault, and both are unrelated to his work with Defendant. The convictions are nearing 10 years old making them ripe for exclusion pursuant to Fed. R. Evid. 609 and 403. Deutsch has never been convicted of a felony for driving while impaired. |
| 3. | The insurance cards appear altered; one includes Deutsch's birthday, and one included Lyons' birthday. | This is pure speculation by Defendant, not relevant evidence under Rule 401, and prejudicial to Plaintiffs under Rule 403. The Court must disregard this statement. Mr. Deutsch denied modifying insurance cards. (Deutsch Dep. 51:23–52:2). |

---

[1] All deposition transcripts and exhibits are appended to the Declaration of Zackary S. Kaylor (ECF 124) unless otherwise noted.

[2] As part of its Opposition, Defendant attaches Facebook posts made by Craig Lyons. (ECF 156). This information was responsive to discovery requests made by Plaintiffs and was not timely produced in response to those requests or by the discovery deadline. Plaintiffs reserve their rights to seek exclusion of this evidence at trial.

| | | |
|---|---|---|
| 4. | Lyons also told Jenkins that he brought this lawsuit because he believed his termination was discriminatory. | Lyons brought this lawsuit because he found out that he was owed money that he worked for. (Lyons Dep. 130:3–8). He did not bring the lawsuit because he was upset that Defendant terminated him and does not seek to punish Defendant for terminating him. (*Id.* at 130:12–14). |

## ARGUMENT

## I. THE COURT MAY AMEND THE CLASS DEFINITION IN ITS DISCRETION.

Plaintiffs provide an overwhelming amount of authority from this District, the Eighth Circuit, and other federal courts around the country that a district court has broad discretion to modify class definitions at the class certification stage. (ECF 130 at 9–10). Defendant cites to Judge Schiltz's opinion in *Caribou Coffee* where he declined to expand the class definition at the class certification stage. *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1033 n.12 (D. Minn. 2007). He could do so at his discretion, as is widely held. To the extent that the decision in *Caribou Coffee* suggests that plaintiffs are bound by the class definition in the complaint—even after the benefit of discovery—the opinion is against the weight of authority. *See In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 210–11 (S.D.N.Y. 2018) (granting expansion of class definition at class certification stage to include new group of class members where defendants had reason to anticipate their inclusion during discovery).

Plaintiffs do not seek to add new class claims or new theories of liability—the one and only Rule 23 claim alleging violations of the MPWA remains and existed at the time

of the original Complaint. Defendant claims that it would be prejudiced by the amendment because it adds other CCRs to the case and because it returns the look back period to what was in the original Complaint. Defendant cannot claim prejudice about the three-year look back to January 2017 because that is the same look back as the FLSA claims and was the Rule 23 look back pleaded in the original Complaint. Defendant was therefore put on notice regarding the proposed time period.

Defendant also cannot claim prejudice about adding CSRs who did not work a week of overtime to the case. The first paragraph of the Amended Complaint states: "This is a class and collective action brought by Plaintiff on his own behalf and on behalf of all similarly situated current and/or former employees of Defendant to recover for Defendant's willful violation of the . . . Minnesota Payment of Wages Act . . . ." (ECF 31 ¶ 1). This case has always been about *all* similarly situated employees. Next, the Rule 23 Class as pleaded in the Amended Complaint seeks unpaid straight-time under the MPWA—meaning that unpaid straight-time has always been at issue in the case. "Plaintiff's legal theories are based on the same legal theories as all other Minnesota Class members: whether all Class members were employed by Defendant on an hourly basis without receiving compensation for 'off-the-clock' wages owed for that work." (*Id.* ¶ 54). Defendant has always had notice that this case was about all CCRs who did not get paid for boot-up and call ready work.

Second, Plaintiffs met-and-conferred with Defendant regarding amendment of the class definition to include all CSRs during the discovery period. (ECF 99 at 5–6). Defendant had sufficient time to serve any discovery related to class issues but chose not to. (*Id.*). Importantly, Defendant chose not to conduct any discovery whatsoever regarding

the class pleaded in the Amended Complaint, let alone Plaintiffs' proposed definition. (*Id.*). Defendant stated at the hearing before Judge Wright that even if she granted Plaintiffs' motion to amend the class definition to include all CCRs, Defendant "would not serve additional discovery" because it could "obtain all the information we need through the depositions we have noticed." (Ex. 1, 38:3–17). Defendant's admissions and litigation strategy belies any concerns regarding prejudice.

Moreover, Plaintiffs requested timesheets and paystubs for class members as part of their class discovery efforts and Defendant objected to production absent a class certification order. Adding all CSRs therefore puts the parties in the same boat. Regardless, this information goes to damages and not liability. The work CCRs performed did not change based on whether they worked overtime or not—unpaid boot-up and call ready work occurred *every* shift by *every* CCR. The facts and the law support Plaintiffs' proposed class definition and Defendant cannot show that it is prejudiced by the definition.

## II. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23.

### A. Numerosity Exists.

The opt-in rate of the FLSA collective action does not provide insights as to the willingness of CCRs to participate in the Rule 23 class. "It is well-established that there are strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA." *Rutti v. Lojack Corp., Inc.*, No. SACV 06–350, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012). The court in *Rutti* cited to a law review article that surveyed FLSA

opt-in rates to find an average opt-in rate of 15.71%. *Id.* The article compared this to another study documenting a 1% opt-out rate for class actions.[3]

The FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs. *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 308 (D. Mass. 2004). "Thus, an employee's failure to opt in to the FLSA litigation should not deprive them of their right to pursue a state law remedy through a single class action." *Id.*; *see O'Brien v. Encotech Const. Services, Inc.*, 203 F.R.D. 346, 352 (N.D. Ill. 2001) (stating "a FLSA action seeks to address violations of federally-conferred rights, while the putative class action under counts 1 and 2 seeks to address violations of state-conferred rights."); *Nerland*, 564 F. Supp. 2d at 1031 (disagreeing with employer's assumption that all of the stores managers who desired to join the lawsuit did so by opting into the FLSA action). Numerosity is easily satisfied, and Defendant cannot rely on the FLSA opt-in rate to demonstrate CCRs' interests in effectuating their separate state-conferred rights under Rule 23.

### B.  The Commonality Requirement of Rule 23(a) and the Predominance Requirement of Rule 23(b) are Met.

Defendant fails to rebut that there are common questions of fact and law that predominate over individualized issues. This case is no different than the one this District considered in *Burch v. Qwest Communications Intern., Inc.*, 677 F. Supp. 2d 1101 (D. Minn. 2009). CCRs must perform compensable activities under the MPWA before they

---

[3] Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (analyzing low opt-in rates in FLSA collective actions).

start getting paid. Those activities are the same. CCRs must turn on or wake up their computer, log in to the computer, open a web browser, open the ADP website, login to ADP, and clock in. Defendant's concerns either do not require individualized analysis or go to the question of damages—which does not preclude a finding of commonality and predominance.

First, Defendant asserts that its time-adjustment policy will create individualized issues that predominate. Plaintiffs addressed Defendant's time-adjustment policy in their Reply to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs incorporate those arguments here. Defendant's time adjustment policy is not intended as a mechanism for recording the ordinary boot-up and call ready work that occurs every shift by every CCR. There are no emails or other documentation attesting to that fact, nor is there any written policy requiring CCRs to request time adjustments when they have completed boot-up work before they can access ADP. The time punch change requests were for instances where an employee forgot to clock in or out. (ECF 142, Exs. 10–15). Defendant expressly admitted that it did not keep track of the time CCRs spent performing boot-up and call ready work. (Ex. 3 at No. 11; Ex. 4 at No. 11). CCRs testified that they were not instructed to request time punch changes when they completed boot-up work. (*See* Mendez Zepeta Dep. 77:8–12; Arth Dep. 37:11–14; Jenkins Dep. 48:25–49:3; Deutsch Dep. 92:7–11; Lyons Dep. 139:7–11).

To the extent that any time adjustment may have resulted in boot-up work being compensated as Defendant alleges, it is clear from the record that such occasions were infrequent and irregular. *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311

F.R.D. 590, 617 (C.D. Cal. 2015) (finding predominance where some managers adjusted employees' time punches to account for off-the-clock work); *Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-01854-RS, 2022 WL 1443338, *8 (N.D. Cal. May 6, 2022) (finding that whether employees submitted time adjustment forms to be paid for the work at issue did not warrant decertification because the number of employees who did so "appears to be minimal" and such questions could be addressed as part of damages). "That some small fraction of . . . employees who waited for inspections off the clock may have had their time adjusted by managers does not mean that answering the question here—did employees wait for or undergo these inspections without compensation—requires any individualized analysis." *Moore*, 311 F.R.D. at 617. "The evidence indicates that very few employees, if any, were compensated for all time waiting for and undergoing every single exit inspection." *Id.* Here, there is no individualized analysis, let alone one that predominates common questions, because it is clear that CCRs did not use the time-adjustment process to get paid for the daily work at issue and there is no evidence in the record that Defendant specifically instructed CCRs to record boot-up work in this manner.

Third, Defendant claims that an individualized analysis is needed as to whether CCRs followed Defendant's "policy" about leaving the computers on. This question does not require an individualized analysis because the class members all testified that this policy did not exist. (Deutsch Dep. 71:2–16; Lyons Dep. 16:18–21; Jenkins Dep. 7:15–8:21; Arth Dep. 17:20–18:13; Mendez Zepeta Dep. 6:24–7:14). Defendant admitted it does not have a written policy that computers should be kept turned on. (Miles Dep. 116:24–117:6). There is no individualized analysis needed because class members already provided

8

a common answer: the policy does not exist. Additionally, the difference between turning on the computer versus waking the computer up is a damages question that is suitable for class treatment. *See also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 909 (N.D. Iowa 2008) (finding common questions predominated where employees did not don and doff the same PPE or use the same equipment).

The amount of time it took to perform unpaid boot-up and call ready work is a common question that does not defeat class treatment. Damages determinations are individual in nearly all wage-and-hour class actions. *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). Thus, the amount of damages is invariably an individual question and does not defeat class action treatment. *Id.* at 514 (quotation omitted); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (stating "individualized monetary claims belong in Rule 23(b)(3)."); *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (stating common proof for class members is not required and "the fact that damages are not identical across all class members should not preclude class certification"); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 489 (D. Minn. 2015) (finding predominance where "Plaintiffs' damages may ultimately require some individualized proof"). Individualized inquiries regarding the amount of time it takes to complete boot-up and call ready work speaks to damages and does not preclude class certification.

Plaintiffs dispute that the alleged "modifications" to Lyons' computer had any impact on the amount of time it took him to become call ready. Moreover, there is simply no evidence in the record that any supposed "modifications" on Lyons' computer affected

the boot-up time. This is bolstered by the fact that other class members provided testimony regarding the boot-up process that was within the range of the two videos recorded by Lyons. In other words, "modification" aside, the boot-up time still took other Plaintiffs a similar amount of time to complete the boot-up and call ready work. (*See* Deutsch Dep. 21:16–22; Jenkins Dep. 47:14–24; Arth Dep. 13:22–14:9; Mendez Zepeta Dep. 12:16–20; Dols Dep. 37:13–20). Thus, Defendant cannot demonstrate that such "modifications" provide an individualized issue that predominates over common questions when it can only point to a single testifying class member (16% of the testifying class) who performed the alleged "modifications." Moreover, the "modifications" have nothing to do with liability but present a damages question, meaning, did it affect the amount of time it took Lyons to prepare his computer? This is not a question that precludes class certification. *See Cruz v. TMI Hospitality, Inc.*, No. 14–cv–1128 (SRN/FLN), 2015 WL 6671334, at *9 (D. Minn. Oct. 30, 2015) ("While it is true that there may be individual questions regarding the amount of time that a particular individual was required to work off the clock or how often the individual was not paid in a timely manner under § 181.101, those individual issues relate to damages."). Defendant fails to identity individualized issues that predominate over common questions.

        *C.     The Claims of the Proposed Class Representatives are Typical of the Class.*

Typicality is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members. I*n re Potash Antitrust Litig.*, 159 F.R.D. 682, 690 (D. Minn. 1995). Thus, a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences.

*Id.* The focus of the typicality requirement is whether pursuing a class action implicates conflicting interests within the class. *Id.* at 691.

Lyons is not subject to a unique defense. Defendant's contention is whether the alleged "modifications" impacted the amount of time it took Lyons to prepare his computer. This is a damages defense where individualized inquires are permissible. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (finding typicality satisfied where class representative brought same claim under federal statute as class members even though "damage calculations might differ"). The *Nagel* decision Defendant cites is inapplicable here. There, a union member brought a claim for breach of the duty of fair representation against his union and sought to represent a class that included members working under different contracts that were negotiated with different employers. *Nagel v. United Food & Com. Workers Union*, No. 18-cv-1053 (WMW/ECW), 2021 WL 347414, at *4 (D. Minn. Feb. 2, 2021). The court found typicality not satisfied because the claims would not emanate from the same event. *Id.* at *5 (discussing required analysis of different CBA negotiations between bargaining units and employers plaintiff was not privy to). Here, Lyons' claim is typical of the class because it is based on the same conduct, non-compensation for boot-up work, and the same remedial theory, breach of the MPWA.

Defendant's arguments regarding Deutsch are similarly unpersuasive. Defendant's arguments again go to the question of damages and do not present a defense as to liability. Whether Deutsch experienced more computer updates or left his computer on or off only impacts the amount of time he should be compensated. He seeks the same claims and relief as the Class, compensation for unpaid boot-up work under the MPWA. *See Vega v. All My*

11

*Sons Business Development LLC*, 583 F. Supp. 3d 1244, 1264 (D. Ariz. 2022) (finding typicality satisfied where unpaid wage claims arose from compensation practices that applied to plaintiff as they applied to others even if the claims were not identical in terms of daily tasks performed or total hours worked); *Roldan v. Bland Landscaping Co., Inc.*, 341 F.R.D. 23, 33 (W.D.N.C. 2022) (stating "representative's claims must only have the same essential characteristics as the claims of the class at large.").

The issues raised by Defendant do not defeat the requirement that Lyons' and Deutsch's claims be typical of the class. Both class representatives seek recovery for the same injury and for the same work as the Class. That is all Rule 23(a)(3) requires.

### D.    *The Proposed Class Representatives Meet the Adequacy Requirements.*

The adequacy requirements are not rigorous. A class representative need not have personal knowledge of the facts needed to make out a prima facie case. *Thompson v. Allianz Life Ins. Co. of North America*, 330 F.R.D. 219, 225 (D. Minn. 2019). The depth of a named representative's knowledge is irrelevant. *Id.* The only thing class representatives need to show to demonstrate their adequacy is that they have common interests and will vigorously prosecute the case. *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 287 (D. Minn. 2018) (finding adequacy where "Plaintiffs are institutional shareholders that share the class's common interest in obtaining damages for Medtronic's alleged violations of securities laws" and "have testified to their willingness to vigorously prosecute the interests of the class.").

Defendant's adequacy concerns do not show an intra-class conflict between Lyons, Deutsch, and the Class. Perfect symmetry of interest is not required and not every

discrepancy among the interests of class members renders a putative class action untenable. *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020). To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole. *Id.* (citing *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012)). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros*, 699 F.3d at 138 (citing 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)). An intra-class conflict may exist where a class representative seeks a result that the class does not want. *See Nagel*, 2021 WL 347414, at *5 (finding that union members bargained away benefit plaintiff sought because union members believed it would strengthen the overall health of the union).

Here, Defendant claims that Lyons has a "personal animus" that puts him at odds with the Class. Defendant cites no cases where a "personal animus" disqualifies a class representative. Lyons brought this lawsuit because he found out that he was owed money that he worked for. (Lyons Dep. 130:3–8). He did not bring the lawsuit because he was upset that Defendant terminated him and does not seek to punish Defendant for terminating him. (*Id.* at 130:12–14). Lyons also has substantial knowledge regarding the claims in the class action, the class of employees he seeks to represent, and the logistics of this class action. (*Id.* at 121:18–127:1). When asked about his obligations to the Class, Lyons stated, "That I'm showing up for depositions. I'm in contact with the lawyers. I'm making sure that everything is going well for the people I'm representing." (*Id.* at 125:4–9). Furthermore, Lyons seeks compensation for the Class' unpaid boot-up time, which is what

this case is all about. (*Id.* at 122:25–123:21). Defendant does not explain how Lyons' alleged "personal animus" goes to the heart of the litigation or will produce a result that conflicts with the desires of the Class. This is not the intra-class contemplated by Rule 23(a)(4) and Lyons adequately represents the Class.

Defendant's arguments regarding Deutsch's adequacy similarly fail. Deutsch, the Named-Plaintiff in this action, started the case and has participated in its decision-making from day one. (ECF 133 ¶ 7). Mr. Deutsch was deposed and made himself available for an in-person, full-day deposition at Defendant's request. Quite frankly, a class representative cannot do much more to vigorously litigate an action. *See Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250 (S.D.N.Y. 2010) (finding class representatives adequate where they did not sit for depositions). Both Lyons and Deutsch meet Rule 23(a)(4)'s adequacy requirements and the Court should appoint them as class representatives.

### E.    A Class Action is a Superior Method of Resolving the Claims of CCRs.

As common questions of fact and law predominate, the Court should find the class action the superior method of resolving the claims of the Class. This District has previously held that class actions are the superior method of litigating MPWA claims. *Burch*, 677 F. Supp. 2d at 1129; *Cruz*, 2015 WL 6671334, at *13. Importantly, a class action is a superior method of litigating the MPWA claims because at least 77 class members are unaware that this litigation is occurring because they did not receive FLSA notice. (ECF 95 at 13).

Defendant cites to Minnesota's "last paycheck" laws as a superior method of litigating the claims at issue. This is disingenuous. Defendant's argument presupposes that it considers the work at issue compensable and that all a Class member needed to do is

14

demand payment for unpaid wages under one of the statutes. Defendant's vigorous defense of this action speaks otherwise. A Class member seeking payment under one of these statutes would have been told by Defendant that such time was not compensable. A Class member would then be left to find an attorney to prosecute the action in Court. Such a result is exactly why Rule 23 exists. Plaintiffs have demonstrated superiority and the Court should certify the class requested.

### F.      *Damages Can Be Calculated Class-wide.*

Defendant did not keep track of the time CCRs spent performing boot-up work and making themselves call-ready. "Where an employer has failed to keep records, the consequences for such failure should fall on the employer, not the employee." *Moore*, 311 F.R.D. at 621. As such, Plaintiffs and the Class must rely on testimony from class members and videos recorded by Plaintiff Craig Lyons to establish damages. "If calculation of individualized damages is complex, the court has numerous efficient means to resolve such issues, including questionnaires, surveys, representative testimony, the use of a special master and other aggregate analysis." *Id.* at 622. Also, when a plaintiff seeks putative class members' timekeeping records and the employer fails to provide them in discovery, failure to have analyzed these records and present a damages calculation is not fatal at class certification. *Id.*

Plaintiffs' damages model is simple: the jury can hear the testimony of class members and evidence like the Lyons' videos and then decide on a number of minutes that represent the amount of unpaid time CCRs spend performing boot-up and call ready work. That number can then be synthesized with CCRs' timesheets and paystubs to calculate the

total number of minutes that went unpaid per CCR and the value of that unpaid time per CCR.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant their Motion for Class Certification and Appointment of Class Representatives and Class Counsel.

Date: October 28, 2022                              Respectfully submitted,

*s/ Jacob R. Rusch*
Jacob R. Rusch (Bar No. 0391892)
Timothy J. Becker (Bar No. 0256663)
Zackary S. Kaylor (Bar No. 0400854)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
jrusch@johnsonbecker.com
tbecker@johnsonbecker.com
zkaylor@johnsonbecker.com

*Attorneys for Plaintiffs*

16